19 Cal.Rptr.3d 801 (2004)
123 Cal.App.4th 181
In re JUSTICE P. et al., Persons Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
Stephen P., Defendant and Appellant.
No. D044163.
Court of Appeal, Fourth District, Division One.
October 20, 2004.
Review Denied January 12, 2005.
*803 Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.
John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Christa G. Baxter, Deputy County Counsel, for Plaintiff and Respondent.
Christopher Blake, San Diego, under appointment by the Court of Appeal, for the Minors.
*802 HALLER, J.
Stephen P. (Stephen), the father of Justice P., Devin P., Stephen M.P., and Hunter P., appeals the termination of his parental rights pursuant to Welfare and Institutions Code section 366.26.[1] Stephen contends the juvenile court should have granted an evidentiary hearing on his petition to modify (§ 388) the court's earlier rulings that he had been given notice of the proceedings as required by law and that the San Diego County Health and Human Services Agency (Agency) had made reasonable search efforts to find him. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
On October 6, 2002, Agency took Justice, seven years old, Devin, five years old, Stephen M.P., three years old, and Hunter, one year old, into protective custody after their mother, Tricia P., was arrested for using a stolen credit card.[2]
Tricia identified the children's father as Stephen and said she believed he was living in Arizona. Stephen and Tricia were married in June 1995; Tricia said they had separated and she was divorcing him. Agency initiated a parent search for Stephen. Susan G., the maternal grandmother (maternal grandmother) who was living in Arizona at the time, told the social worker that Stephen was released from jail on September 9, 2002. The maternal grandmother subsequently moved to Idaho.
On October 9, 2002, Agency filed dependency petitions on behalf of the children, alleging there was a substantial risk of harm to them because they had been exposed *804 to domestic violence between Tricia and her boyfriend (§ 300, subd. (b)), and they had been left without any provision for support because Tricia was incarcerated and the whereabouts of Stephen were unknown (§ 300, subd. (g)). At the detention hearing, Tricia filled out paternity questionnaires for all four children in which she identified Stephen as their father and provided his birth date and Social Security number. The court ordered Agency to conduct a reasonable search to locate Stephen and notify him of the proceedings.
On October 31, 2002, the court made true findings on the section 300, subdivision (b), allegations and sustained the petitions. The court found notice had been given as required by law, Stephen's whereabouts remained unknown, and reasonable search efforts had been made.
In anticipation of the upcoming disposition hearing, the social worker reported that when she searched the Internet for Stephen using his name, there were no results. The worker's Internet search using the address listed on Stephen's Arizona driver's license showed that Stephen had used the address of the maternal grandmother and her husband. The social worker telephoned the maternal grandmother, who said Stephen used the address without permission. On November 7, 2002, the social worker received information listing a different Phoenix address (Colter Street) from the parent search. The social worker mailed a parent notification letter to Stephen at that address; the letter stated the four children were in protective custody, listed the date for the next hearing and explained how to have an attorney appointed for him.
At the November 14, 2002 dispositional hearing, the court ordered Tricia to comply with her case plan. The court also made notice findings as to Stephen.
On November 21, 2002, after being notified by postal officials in Phoenix that Stephen was "not known" at the Colter Street address, Agency's parent search clerk sent a letter to the Maricopa County Sheriff in Phoenix seeking assistance in locating Stephen. A sheriff's employee wrote a note on the letter that an individual with Stephen's name and Social Security number was in custody in the Durango Jail and mailed back the letter to the Agency. Apparently, Agency received the letter in early December. The new social worker did not pursue this lead, and as late as April 28, 2003, was reporting to the court that Stephen's whereabouts were unknown.
On May 1, 2003, Agency mailed a parent notification letter to Stephen at the Durango Jail. The letter was returned to Agency because Stephen was no longer in custody.
For the upcoming six-month review hearing, Agency recommended services be terminated and a section 366.26 hearing be set. After visiting the children twice, Tricia had moved to Arizona the preceding November (2002). Tricia did not recontact the children until March 8, 2003, when she visited them for one and one-half hours at a fast food restaurant. It was Tricia's last contact with the children.
At the six-month review hearing on May 14, 2003, the court found notice had been given as required by law to all parties except Stephen, whose status at that time was alleged father. Tricia had not enrolled in any of the reunification services offered to her. The court terminated services and set a section 366.26 hearing for the children.
At the end of June 2003, Agency prepared a notice of the upcoming section 366.26 hearing for Stephen addressed at the Arizona State Prison in Buckeye, Arizona. Stephen was served with the *805 notice on July 29. At that time, Stephen signed a waiver of the 45-day notice requirement for notice of a section 366.26 hearing.
On October 3, 2003, Stephen wrote a letter to the court, saying he "would never [relinquish] my parental rights" and did not understand why the Agency concluded he did not want his children. Stephen said he did not have time to reply earlier or the postage to do so. He also said he had written and attempted to telephone the maternal grandmother at her previous Phoenix address and telephone number, but the letters were returned and the telephone was disconnected.
On October 17, 2003, the court appointed counsel for Stephen and distributed Stephen's letter to all counsel.
On December 10, 2003, the court found Stephen to be the presumed father of the children and amended the petitions.
Meanwhile, the court continued the section 366.26 hearing for several months to provide notice to Tricia.
In January 2004, Stephen telephoned the adoption assessment worker and left a voice mail message requesting contact with the children. Later that month, the worker wrote a letter to Stephen, telling him (1) he could write the children through her, (2) the letters would have to be appropriate, (3) the letters would be given to the children's therapist, who would decide when they would be shared with the children. In reply, Stephen wrote the worker, stating (1) that he adamantly opposed adoption of his children, (2) Tricia lied and hid the children from him, (3) but for his incarceration, the children would be with him, (4) his release date from prison is August 10, 2005, and while in prison he had completed a parenting class and various trade courses.
On January 26, 2004, Stephen filed a section 388 motion to modify the court's November 14, 2002 notice findings.[3] The petition alleged that a parent search conducted with due diligence would have uncovered Stephen's whereabouts much earlier, and Agency's due process violation was a per se violation of the best interests of the children. The petition sought to vacate the section 366.26 reference order and to set a new disposition hearing in which a case plan for Stephen could be ordered.
On February 24, 2004, the juvenile court denied an evidentiary hearing on Stephen's section 388 motion. Proceeding to the section 366.26 hearing, the court found it was likely that each child would be adopted if parental rights were terminated, none of the statutory exceptions to adoption existed, and adoption was in the best interests of each child. The court terminated the parental rights of Stephen and Tricia.

DISCUSSION
Stephen contends the juvenile court erred in denying him an evidentiary hearing on his section 388 motion because the petition established the requisite prima facie showings for a hearing. Stephen also contends the denial of a hearing violated his due process rights.

Relevant Law
Due process requires that a parent is entitled to notice that is reasonably calculated to apprise him or her of the dependency proceedings and afford him or her an opportunity to object. (In re Melinda J. (1991) 234 Cal.App.3d 1413, 1418, 286 Cal.Rptr. 239.) The child welfare agency must act with diligence to locate a missing parent. (See, e.g., David B. v. Superior Court (1994) 21 Cal.App.4th 1010, *806 1016, 26 Cal.Rptr.2d 586.) Reasonable diligence denotes a thorough, systematic investigation and an inquiry conducted in good faith. (In re Arlyne A. (2000) 85 Cal.App.4th 591, 598-599, 102 Cal.Rptr.2d 109.)
However, there is no due process violation when there has been a good faith attempt to provide notice to a parent who is transient and whose whereabouts are unknown for the majority of the proceedings. (In re Melinda J., supra, 234 Cal. App.3d at pp. 1418-1419, 286 Cal.Rptr. 239; see also Mullane v. Central Hanover Bank & Trust Co. (1950) 339 U.S. 306, 317, 70 S.Ct. 652, 94 L.Ed. 865 ["in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights"].)
Under section 388, a parent may petition the court to change, modify, or set aside a previous court order on the grounds of changed circumstances or new evidence. (§ 388, subd. (a).) The petition must allege why the requested change is "in the best interest of the dependent child." (§ 388, subd. (b).) Section 388 goes on to state: "If it appears that the best interests of the child may be promoted by the proposed change or order ... the court shall order that a hearing be held." (§ 388, subd. (c).) However, the court may summarily deny the motion if the petition fails to make a prima facie showing (1) of a change of circumstances or new evidence requiring a changed order, and (2) the requested change would promote the best interests of the child. (In re Anthony W. (2001) 87 Cal.App.4th 246, 250, 104 Cal.Rptr.2d 422.) In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (See In re Jamika W. (1997) 54 Cal. App.4th 1446, 1450-1451, 63 Cal.Rptr.2d 513.)
A section 388 motion is a proper vehicle to raise a due process challenge based on lack of notice. (Ansley v. Superior Court (1986) 185 Cal.App.3d 477, 481, 487-488, 229 Cal.Rptr. 771 (Ansley).)

Analysis
Our review of the record shows the court's notice findings through the dispositional hearing were sound. Agency, using information supplied by Tricia, instituted a parent search. The social worker searched the Internet and found the address on Stephen's Arizona driver's license; the social worker followed up and determined the address belonged to the maternal grandmother and Stephen did not have permission to use it. Next, the parent search came up with the Colter Street address for Stephen in Phoenix; this address also was a dead end. That was the state of the parent search for Stephen when the dispositional hearing was held on November 14, 2002. Substantial evidence supports the court's notice findings at that time.
After the letter sent to Stephen at the Colter Street address was returned by postal authorities, the parent search clerk wrote to the sheriff in Maricopa County in Arizona for help with the search. A sheriff's employee replied that Stephen was in the Durango Jail. The record indicates Agency received this information in early December 2002. It was at this point that Agency effectively abandoned the search for Stephen for five months. Agency made no attempt to notify Stephen at the jail until May 1, 2003, when Stephen was no longer in custody there. The five-month delay in attempting to notify Stephen at the Durango Jail was inexcusable *807 and, in effect, guaranteed the futility of that particular notice attempt. Stephen was not given proper notice until July 29, 2003.
Accordingly, we will assume for purposes of this appeal that Stephen's petition, by setting forth the efforts Agency made or did not make to locate and notify him of these proceedings  including waiting five months to attempt to notify him at the Durango Jail  made a prima facie showing of new evidence sufficient to satisfy the first prong under section 388. However, a court may still deny a section 388 petition without an evidentiary hearing if the parent does not make a prima facie showing that the relief sought would promote a child's best interests. (In re Elizabeth M. (1997) 52 Cal.App.4th 318, 322-323, 60 Cal.Rptr.2d 557.)
In his section 388 petition, Stephen failed to allege any facts supporting a prima facie showing that the best interests of the children would be promoted by vacating the order setting the section 366.26 hearing, recalendaring the dispositional hearing, and offering him services. Rather, Stephen's petition alleged that the relief sought was in the children's best interests because "[a] due process violation is per se violative of the best interests of the child."
Stephen, who reiterates this position on appeal, relies on the following language in Ansley, supra, 185 Cal.App.3d 477, 229 Cal.Rptr. 771:
"[I]t is implicit in the juvenile dependency statutes that it is always in the best interests of a minor to have a dependency adjudication based upon all material facts and circumstances and the participation of all interested parties entitled to notice." (Id. at pp. 490-491, 229 Cal. Rptr. 771.)
First, we note that Ansley is distinguishable from this case. In Ansley, the social services agency made no efforts to give notice to the father (Ansley, supra, 185 Cal.App.3d at p. 481, 229 Cal.Rptr. 771); here, Agency initially made reasonable search efforts, but later did not follow through. The father in Ansley sought to challenge the jurisdiction of the court. (Id. at p. 482, 229 Cal.Rptr. 771.) Stephen is not challenging the court's jurisdiction; rather, he is requesting a new disposition hearing be calendared so he can receive reunification services.
Also, Ansley arose in a different procedural context. In Ansley, after two trial judges ruled that the father was entitled to an evidentiary hearing on his section 388 petition, a third judge denied the hearing because there was no change of circumstances or new evidence concerning the child. (Ansley, supra, 185 Cal.App.3d at pp. 482-483, 490, 229 Cal.Rptr. 771.) The father then filed a petition for mandate, which the Court of Appeal granted, holding a section 388 petition could be used to mount a due process challenge based on lack of notice. (Ansley, supra, 185 Cal. App.3d at pp. 483, 484-488, 229 Cal.Rptr. 771.) The above quoted language from Ansley was the third of three rationales used to rebut an argument that there was no error in denying the hearing.[4]
In any event, we do not read the Ansley language nearly so broadly as Stephen does. In effect, Stephen is claiming that as a matter of law any section 388 petition that makes a prima facie showing of a notice violation necessarily meets the requisite "best interests" prima facie showing. In other words, Stephen urges a rule under which the juvenile court would have no *808 discretion to deny an evidentiary hearing if the petition made a prima facie showing of a notice violation. Such a rule would be antithetical to not only the section 388 petition process but also to the current dependency system as a whole.
To us, the language in Ansley is a lofty expression of how the dependency system would work under ideal circumstances, but does not reflect the all too often harsh reality of how these cases proceed. It is not always possible to litigate a dependency case with all parties present. The law recognizes this and requires only reasonable efforts to search for and notice missing parents. Where reasonable efforts have been made, a dependency case properly proceeds. If a missing parent later surfaces, it does not automatically follow that the best interests of the child will be promoted by going back to square one and relitigating the case. Children need stability and permanence in their lives, not protracted legal proceedings that prolong uncertainty for them. Further, the very nature of determining a child's best interests calls for a case-by-case analysis, not a mechanical rule.
The automatic rule Stephen urges on the basis of the Ansley language is not in keeping with section 388 as interpreted in case law. "[S]ection 388 contemplates that a petition make a prima facie showing of both elements to trigger an evidentiary hearing on the petition." (In re Zachary G. (1999) 77 Cal.App.4th 799, 806, 92 Cal. Rptr.2d 20.) The statutory language "makes clear that the hearing is only to be held if it appears that the best interests of the child may be promoted by the proposed change of order." (Id. at pp. 806-807, 92 Cal.Rptr.2d 20.)
Moreover, when Ansley was decided in 1986, the statutory dependency scheme was different from the current streamlined statutory framework. Under the old legislative scheme, dependency cases sometimes went on for years before parental rights were terminated. The current legislative scheme recognizes the child's interest in having a stable and permanent home is paramount once the parents' interest in reunification is no longer an issue. (See In re Marilyn H. (1993) 5 Cal.4th 295, 310, 19 Cal.Rptr.2d 544, 851 P.2d 826.) It imposes strict deadlines to resolve the child's future in a timely fashion; for example, at the 18-month deadline, parent and child are either reunified, or a permanent plan, such as adoption or guardianship, is implemented. (See §§ 361.5, subd. (a), 366.21, subd. (g)(1), 366.22, subd. (a).)
On appeal, Stephen argues that in addition to his per se notice violation theory, the record supports a best interests prima facie showing because: (1) he has been "a substantial fixture in the lives of his children"; (2) as the children's biological father, he is entitled to the presumption in favor of natural parents absent a showing of parental unfitness; and (3) he would keep all the children together, maintaining the sibling relationships. Agency urges us not to consider this appellate argument because Stephen waived it by not raising it below. (See, e.g., In re Lorenzo C. (1997) 54 Cal.App.4th 1330, 1339, 63 Cal.Rptr.2d 562.) Putting aside the waiver issue, we conclude Stephen cannot prevail on the merits under his "best interests" appellate argument.
Stephen's point about being a "substantial fixture in the children's lives" is historical information that is relevant to his status as a presumed father, but not to the best interests of his children, who have not seen him since December 2001.
The presumption favoring natural parents by itself does not satisfy the best interests prong of section 388. The cases that state a child may be better off with his or her biological parent rather than *809 with strangers do so when the biological parent has shown a sustained commitment to the child and parenting responsibilities. (See Adoption of Kelsey S. (1992) 1 Cal.4th 816, 844-849, 4 Cal.Rptr.2d 615, 823 P.2d 1216; In re O.S. (2002) 102 Cal. App.4th 1402, 1411, 126 Cal.Rptr.2d 571.) By contrast, here the juvenile court could reasonably discount Stephen's claim that Tricia hid the children from him; Stephen, who had not seen the children for almost a year before the dependency proceedings began, knew how to contact the maternal grandmother, who was in touch with Tricia and the children in San Diego.[5] Further, Stephen waited two months after he was noticed to contact the court and did not contact the children in the seven months between the notice and the section 366.26 hearing. Also, Stephen's criminal lifestyle  he was in and out of penal institutions in Arizona throughout the dependency proceedings  evidenced a lack of interest in the children because his incarceration precluded a full commitment to his parental responsibilities.
Finally, the interest in continuing relationships among siblings, which is recognized as an exception to adoption (§ 366.26, subd. (e)), was not at risk in this case. Since July 2003, the three oldest children have been in a prospective adoption placement with the maternal grandmother, and the youngest child was in a prospective adoption placement with a maternal great aunt. Both the maternal grandmother and the maternal great aunt were committed to maintaining the sibling relationship.
In sum, we reject the notion that every section 388 petition based on a notice violation merits an evidentiary hearing as a matter of law regardless of whether there is a prima facie showing that the best interests of the child will be promoted. Because Stephen did not make any showing that the proposed order change would be in the children's best interests, the court did not err by denying a hearing.
As to the claim that the denial of an evidentiary hearing violated Stephen's due process rights to be heard in these dependency cases, we have already expressed our disapproval of Agency's five-month delay in giving notice to Stephen at the Durango Jail when it had knowledge of his custody in the facility. Nevertheless, Stephen's failure to demonstrate prejudice stemming from his delayed notice is dispositive.
In dependency proceedings, due process violations have been held subject to the harmless beyond a reasonable doubt standard of prejudice. (See In re Angela C. (2002) 99 Cal.App.4th 389, 120 Cal. Rptr.2d 922; In re Dolly D. (1995) 41 Cal.App.4th 440, 446, 48 Cal.Rptr.2d 691.)
The length of Stephen's prison sentence precluded him from reunifying with the children within the maximum 18-month time limit. That deadline would have occurred in May 2004. Stephen was not scheduled to be released until August 2005, well past the reunification period. We are convinced beyond a reasonable doubt that the delay in notifying him did not prejudice his rights.

DISPOSITION
Judgments are affirmed.
WE CONCUR: HUFFMAN, Acting P.J., and McDONALD, J.
NOTES
[1] All statutory references are to the Welfare and Institutions Code.
[2] Tricia did not appeal the judgment terminating her parental rights and, therefore, she is discussed only when relevant to the issues relating to Stephen.
[3] This order was made at the dispositional hearing.
[4] The Ansley court did not cite any law in support of the quoted language or further develop how the language related to section 388.
[5] The maternal grandmother even urged Stephen to help her convince Tricia and the children to return to Phoenix, but Stephen did not pursue this suggestion.