70 Cal.Rptr.3d 1 (2007)
158 Cal.App.4th 174
In re J.H., a Person Coming Under the Juvenile Court Law.
Los Angeles County Department of Children and Family Services, Plaintiff and Respondent,
v.
Jorge R., Defendant and Appellant.
No. B198363.
Court of Appeal of California, Second District, Division One.
November 26, 2007.
*2 Andre F.F. Toscano, under appointment by the Court of Appeal, for Defendant and Appellant.
Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, and Frank J. DaVanzo, Principal Deputy County Counsel, for Plaintiff and Respondent.
MALLANO, Acting P.J.
Jorge R. (Father) appeals from an April 5, 2007 order terminating parental rights to his daughter, J.H., born in July 2002. He contends that the juvenile court erred in rejecting his collateral attack on all case orders before his first appearance in the case on March 21, 2007, on the ground that he was denied his due process right to notice of those proceedings. We conclude that any due process violations were harmless beyond a reasonable doubt and affirm the April 5, 2007 order.

BACKGROUND
The Los Angeles County Department of Children and Family Services (DCFS) detained J.H. in March 2004 after P.H. (Mother), who had a long history of drug abuse and a criminal record, was arrested and then incarcerated for burglary. When J.H. was detained, Father was incarcerated and had not had any contact with his daughter for over four months, but before that time, Father had provided milk, food, diapers, and whatever Mother needed for her. J.H. was initially detained in the home of her paternal aunt, but by May 2004, she was placed in foster care after DCFS learned that persons with a criminal record were residing in the aunt's home. The paternal aunt also told a DCFS social worker in late March 2004 that she may not be able to continue to care for J.H.
In September 2006, J.H. was placed with a foster parent who is her prospective adoptive parent. J.H.'s prospective adoptive parent is also the prospective adoptive parent and paternal aunt of J.H.'s half sibling, Randy T. (born in Dec. 2005). Randy was detained from Mother at birth because of his positive toxicology for cocaine and placed with his paternal aunt.

1. Notice of Jurisdiction and Disposition Hearings
At the March 29, 2004 detention hearing, the juvenile court found that Father's whereabouts were unknown and ordered a due diligence search to locate him. On April 15, 2004, when Father was incarcerated, a dependency investigator sent Father a letter about J.H.'s dependency case by first class mail with an address of the Terminal Annex/North County Correctional Facility. Also on April 15 and to the same address, DCFS sent by certified mail, return receipt requested, and by first class mail, notice of a May 10, 2004 jurisdiction *3 and disposition hearing to Father.[1] Attached to the April 15 notice was a copy of the original petition, which contained allegations that J.H. was a dependent of the juvenile court under Welfare and Institutions Code section 300, subdivisions (b) (failure to protect) and (g) (no provision for support), based on conduct by both parents.[2] The juvenile court also issued a removal order for Father's appearance at the May 10, 2004 hearing.
Although Father was released from jail on April 20, 2004, he did not respond to DCFS's letter or notice, nor did he appear at the May 10, 2004 hearing. The court continued the matter to July 15, 2004.
In June 2004, the social worker contacted Father's probation officer and obtained a telephone number and an address for Father on North Edgemont Street in Los Angeles, which was the telephone number and address of the paternal aunt with whom J.H. was initially placed from March to May 2004. A person, answering the telephone number denied that Father lived at the Edgemont address, but on July 8, DCFS nevertheless sent a notice to Father at that address by certified mail, return receipt requested, and by first class mail, regarding the hearing on July 15, 2004. Although the notice included a copy of the first amended petition, the notice did not advise Father of the nature of the July 15 hearing.
At the July 15, 2004 hearing, the original petition was dismissed and DCFS filed a first amended petition (petition), adding an allegation that J.H. was a dependent child pursuant to section 300, subdivision (b) based on Father's history of domestic violence altercations and an April 2004 felony conviction for corporal injury on a spouse. At the July 15, 2004 hearing, the juvenile court found Father to be a presumed father and continued the matter for DCFS to conduct a due diligence search to locate Father and to provide him notice.
On August 26, 2004, the court found that Father had previously been given proper notice for the July 15, 2004 hearing date, and adjudicated the petition J.H. was declared a dependent pursuant to section 300, subdivision (b), based on Mother's history of substance abuse and Father's domestic violence history and conviction. Both parents were afforded reunification services and monitored visitation, with Father's visitation to begin after contact with DCFS. Father was ordered to attend domestic violence counseling and parent education.

2. Notice of Review Hearings
According to a November 2004 interim review report, Father was no longer at his last known Edgemont address and Mother did not know his whereabouts. Nevertheless, notice of a February 2005 hearing was mailed by first class mail to Father at the Edgemont address. In February 2005, a status review report listed Father's address as the Terminal Annex North County Correctional Facility. The February 24, 2005 minute order stated that the juvenile court found that proper notice of the proceedings had been given and the matter was continued to March 2005. In March, the matter was continued to May 12, 2005, when a contested review hearing was started and then continued to May 31, 2005. DCFS's addendum reports dated May 12 and 31, 2005, did not address Father nor include notice to him of the proceedings or any due diligence reports of the efforts made to locate him.
*4 On May 31, 2005, the court terminated Father's reunification services.
DCFS's September 26, 2005 report did not indicate that Father was noticed for the September 26 hearing, which was to address Mother's visitation and reunification. A hearing in December 2005 considered only the detention of newborn Randy T. Notice of a January 17, 2006 hearing was sent to Father at the Edgemont address by first class mail, but DCFS's status review report for the hearing did not indicate whether or how DCFS determined that it was his current address. On January 17, 2006, the juvenile court set a section 366.26 permanent plan hearing for May 16, 2006. A copy of the January 17, 2006 minute order was also mailed by first class mail to Father at the Edgemont address.

3. Notice of the Permanent Plan Hearing
In March 2006, DCFS's search clerk prepared a declaration of due diligence indicating that Father could not be located and that his last known address was the Edgemont address. The due diligence declaration stated that the Department of Motor Vehicles had an address for Father in Bell, and that the probation office reported that there was a bench warrant for Father's arrest issued on June 29, 2005. According to a May 16, 2006 information for court officer, Father was unknown by the property owner of the Bell address, and a notice of hearing sent to Father at the Edgemont address was returned to DCFS by the postal service marked "`AttemptedNot Known.'" According to DCFS's section 366.26 report dated May 16, 2006, Father had a history of being transient.
On May 16, 2006, the court continued the matter to September 12, 2006, and coordinated it with a review hearing for Randy T. At the September 12, 2006 hearing, the court was informed that on September 11, J.H. was placed in the same prospective adoptive home as her half-sibling Randy T. The matter was continued to October 26, 2006. In September 2006, an adoption home study was approved.
According to the information for court officer dated October 26, 2006, Father's whereabouts were unknown and notice to Father of the permanent plan hearing scheduled for May 16, 2006, had been published in the newspaper on four days in March and April 2006. On October 26, 2006, the matter was continued to February 22, 2007. At the February 22, 2007 hearing, Mother, through her attorney, informed the court that Father was then incarcerated with an expected release date in March 2008. The court directed the preparation of a removal order to bring Father before the court for the continued hearing dates of March 21 and April 5, 2007. A section 366.26 permanent plan hearing was set for both J.H. and Randy T. on April 5, 2007.
On February 23, 2007, DCFS located Father in custody at the Sierra Conservation Center. Father told DCFS that he was in custody due to a "spousal abuse violation," that he was subject to deportation at any time because, having been born in Cuba, he was not a United States citizen, and that his release date was October 2007. Father admitted being aware of the dependency case and claimed that he loved both Mother and J.H. But he did not attempt to get custody of J.H. because of his criminal record and his loss of contact with Mother.

4. Father's Appearances in Court and Section 366.26 Hearing
Father first appeared in dependency court on March 21, 2007, when an attorney was appointed to represent him. At the *5 section 366.26 hearing on April 5, 2007, before Judge Milton, DCFS offered in evidence four reports from February and March 2007. DCFS's attorney also referred to the "good notice" findings in the minute orders throughout the proceedings and argued that "there's been good notice on the file all along," and that "there's a presumption that the findings the previous bench officer made as to notice is correct, and they continue to this day, and we should proceed." Father's attorney pointed out that Father had been in jail since May 2006. Through his attorney, Father contended that he did not receive proper notice of any of the proceedings in the case before he came into court on March 21, 2007. (But Father did not challenge the propriety of notice for the April 5, 2007 hearing.)
The juvenile court found that Father's incarceration after May 2006 did not impact the issue of notice because the last hearing involving Father was in January 2006, when the court set a section 366.26 hearing.
On the issue of notice, the court concluded: "The court does not find any defect in the notice. The fact that this matter has been before the court since March of [2004], appropriate steps, according to Judge Soto [the previous juvenile court judge], were taken to get proper notice to the Father. I don't know what else could have been done." "In essence, you've made a collateral attack on the findings, all the previous findings by prior judicial officer Judge Soto, issue of notice. The court finds that the collateral attack on those just merely by argument, without any evidence presented, is insufficient to disturb those findings by Judge Soto. [¶] All right. The court finds notice proper for the Father for today's proceedings and presumes, as the court should, that the notice findings by the previous bench officer are correct."
After rejecting Mother's objection to termination of parental rights based on section 366.26, subdivision (c)(1)(A) (beneficial relationship exception), and finding J.H. adoptable, the court terminated parental rights. Father appealed from the April 5, 2007 order.

DISCUSSION
Father contends that (1) he was permits ted to collaterally attack the April 5, 2007 order terminating his parental rights on the ground that his constitutional and statutory rights to due process were violated when DCFS failed to conduct a reasonable search for him and did not provide adequate notice of the proceedings before the April 5, 2007 order; (2) the juvenile court erred in concluding that notices of the proceedings before the termination order were proper; and (3) the error was not harmless beyond a reasonable doubt.[3] DCFS maintains that there was proper notice for the jurisdiction and disposition hearing originally set for May 10, 2004, but concedes that notice for the continued hearing date of July 15, 2004, was defective because the notice failed to inform father of the nature of the hearing on July 15, 2004, in violation of section 291, subdivision (d)(2).[4] DCFS maintains that any *6 errors regarding notice were harmless. As we explain below, notwithstanding attempts by DCFS to serve notice on Father, notice for some of the hearings may have been inadequate. But any inadequate notice was harmless beyond a reasonable doubt. Accordingly, the April 5, 2007 order will be affirmed.

1. Notice Requirements
"Parents have a fundamental and compelling interest in the companionship, care, custody, and management of their children. [Citation.] `[T]he state also has an urgent interest in child welfare and shares the parent's interest in an accurate and just decision. [Citation.]' [Citation.] To ensure that result, `[u]ntil parental rights have been terminated, both parents must be given notice at each step of the proceedings. [Citation.]'" (In re DeJohn B. (2000) 84 Cal.App.4th 100, 106, 100 Cal. Rptr.2d 649 (DeJohn B.).)
"At each hearing under section 300 et seq., the court must determine whether notice has been given as required by law and must make an appropriate finding noted in the minutes." (Cal. Rules of Court, rule 5.534(k).)
"Notice is both a constitutional and statutory imperative. In juvenile dependency proceedings, due process requires parents be given notice that is reasonably calculated to advise them an action is pending and afford them an opportunity to defend." (In re Jasmine G. (2005) 127 Cal.App.4th 1109, 1114, 26 Cal.Rptr.3d 394 (Jasmine G.).) "The child welfare agency must act with diligence to locate a missing parent. [Citation.] Reasonable diligence denotes a thorough, systematic investigation and an inquiry conducted in good faith. [Citation.] [¶] However, there is no due process violation when there has been a good faith attempt to provide notice to a parent who is transient and whose whereabouts are unknown for the majority of the proceedings. [Citations.]" (In re Justice P. (2004) 123 Cal.App.4th 181, 188, 19 Cal. Rptr.3d 801 (Justice P.).) Thus, where a parent cannot be located notwithstanding a reasonable search effort, the failure to give actual notice will not render the proceedings invalid. (In re Claudia S. (2005) 131 Cal.App.4th 236, 247, 31 Cal.Rptr.3d 697 (Claudia S.).)
"It is not always possible to litigate a dependency case with all parties present. The law recognizes this and requires only reasonable efforts to search for and notice missing parents. Where reasonable efforts have been made, a dependency case properly proceeds. If a missing parent later surfaces, it does not automatically follow that the best interests of the child will be promoted by going back to square one and relitigating the case. Children need stability and permanence in their lives, not protracted legal proceedings that prolong uncertainty for them. Further, the very nature of determining a child's best interests calls for a case-by-case analysis, not a mechanical rule." (Justice P., supra, 123 Cal.App.4th at p. 191, 19 Cal. Rptr.3d 801.)

*7 2. Standards of Prejudice and Review
Unless there is no attempt to serve notice on a parent, in which case the error has been held to be reversible per se (Jasmine G., supra, 127 Cal.App.4th at p. 1116, 26 Cal.Rptr.3d 394; DeJohn B., supra, 84 Cal.App.4th at pp. 109-110, 100 Cal. Rptr.2d 649), errors in notice do not automatically require reversal but are subject to the harmless beyond a reasonable doubt standard of prejudice. (In re Daniel S. (2004) 115 Cal.App.4th 903, 912-913, 9 Cal. Rptr.3d 646; Justice P., supra, 123 Cal. App.4th at p. 193, 19 Cal.Rptr.3d 801.)
Constitutional issues are reviewed de novo. (Vo v. City of Garden Grove (2004) 115 Cal.App.4th 425, 433, 9 Cal. Rptr.3d 257.)

3. Analysis
The record establishes that on April 15, 2004, DCFS had located Father in custody and sent notice to him there by certified mail, return receipt requested, and caused a removal order to be issued to bring Father to juvenile court for the May 10, 2004 hearing. Although, as noted, DCFS did not receive a returned receipt from the certified mailing, DCFS acted diligently in locating Father and in attempting to notice him by certified mail. DCFS employed a method of notice "such as one, desirous of actually informing the party, might reasonably adopt to accomplish it." (Claudia S., supra, 131 Cal. App.4th at p. 247, 31 Cal.Rptr.3d 697.) Father argues that "it is clear these documents [removal order and notice by certified mail, return receipt requested,] were issued belatedly and never reached Father because he had already been released from jail." But Father was not released from jail until April 20, and, notwithstanding the lack of a signed return receipt, there is no evidence that he did not receive notice of the May 10, 2004 hearing.
In any event, Father fails to cite any authority establishing that notice of jurisdiction and disposition hearings by certified mail, return receipt requested, under section 291, subdivision (e)(1) (see fn. 3, ante), requires that the agency receive a return receipt signed by the parent. The court in In re Wilford J., supra, 131 Cal. App.4th at page 748, footnote 2, 32 Cal. Rptr.3d 317, rejected the contention in similar circumstances: "Although Wilford J. insists there is no evidence the Notice of Hearing on Petition was properly served on him, the record on appeal contains a satisfactory proof of service reflecting the notice was served on Wilford J. via certified mail on April 14, 2004. (See § 291, subd. (e)(1) [requiring notice to parent to be served by personal service or certified mail when parent was not present at initial hearing]; Evid.Code, § 641 [letter correctly addressed and properly mailed is presumed to have been received].) There is also evidence that Wilford J. refused to accept delivery." Section 291, subdivision (e)(1) also lacks any language requiring a signed return receipt. Section 291 is unlike section 294, which permits notice to parents of the section 366.26 hearing by certified mail, return receipt requested, but specifically states that notice is sufficient if the agency receives a signed return receipt.[5]
Whether or not there was proper notice of the May 10, 2004 jurisdiction and disposition hearing date, DCFS concedes that there was not proper notice of the continuance *8 of that hearing to July 15, 2004. And there is no evidence that DCFS conducted a due diligence search for Father before the actual jurisdiction and disposition hearing on August 26, 2004. Thereafter, Father's reunification services were terminated on May 31, 2005, but there is no evidence that DCFS sent notice to Father of that hearing. At a hearing in January 2006, the court set a permanent plan hearing date. DCFS sent notice to Father of the January 2006 hearing at the Edgemont address by first class mail, without determining whether the Edgemont address was his current address. Had DCFS followed up with Father's probation officer or the jail records, DCFS may have been able to obtain a more current address for Father. At the very least, DCFS would have located Father in custody in May 2006, instead of learning of his incarceration from Mother in February 2007.
Assuming that the foregoing attempts to provide notice to Father did not result in actual notice and that DCFS failed to comply with due process notice requirements with respect to the hearings before March 2007, we conclude that any notice errors were harmless beyond a reasonable doubt. Father maintains that had he been "properly noticed of these proceedings at the outset, [J.H.'s] placement with her paternal aunt could have been preserved. Also, had Father been properly noticed he ... would have been able to take appropriate action to have custody of, or maintain his parental rights to [J.H.]"
But the record shows that J.H.'s placement with her paternal aunt would not have been maintained regardless of Father's participation in the proceedings because the paternal aunt was unwilling or unable to care for her and people with criminal records were residing in the aunt's household. And, had Father been afforded actual notice of the August 26, 2004 jurisdiction and disposition hearing, there is no indication that he would have been able to obtain custody of his daughter. Father was incarcerated at the time of her detention and led a transient lifestyle. In June 2004, Father was no longer residing at the Edgemont address, the address provided to DCFS by Father's probation officer, and there is nothing to suggest that in June 2004 Father had an appropriate home for his daughter.
Father knew about the dependency proceedings at some point and chose not to contact DCFS and not to attempt to obtain custody of J.H. At about the time that Father was released from jail in April 2004, his daughter was detained with the paternal aunt, his sister. When DCFS spoke with Father in February 2007, Father admitted that he was aware of the dependency proceedings. But even after DCFS contacted Father and discussed the case with him, Father expressed no interest or willingness to reunify with J.H. Father admitted that he did not attempt to obtain custody of his daughter because of his criminal record and for other reasons. Father also told DCFS that he was subject to deportation at any time.
Thus, there is no evidence that actual notice to Father would have changed the outcome of the jurisdiction and disposition hearing. Any error in failing to give Father proper notice of the jurisdiction and disposition hearing was harmless beyond a reasonable doubt. Similarly, errors with respect to the hearings from August 2004 to March 2007 were also harmless beyond a reasonable doubt because the errors would not have made any difference with respect to Father's reunification with his daughter and the termination of parental rights.
In sum,'we conclude that had Father received proper notice of the proceedings before the date of his initial appearance, *9 he would not have participated in reunification nor would he have obtained different or more favorable rulings from the juvenile court. For these reasons, any due process violations with respect to the pretermination of parental rights orders are harmless beyond a reasonable doubt.

DISPOSITION
The order of April 5, 2007, is affirmed.
We concur: VOGEL and ROTHSCHILD, JJ.
NOTES
[1] There is no evidence of any signed return receipts in the record.
[2] Unspecified statutory references are to the Welfare and Institutions Code.
[3] DCFS does not challenge the first point, but only the second and third. Our determination of the second and third issues does not require us to address the first issue. Nor need we address DCFS's contention that Father was required to make his collateral attack on the prior orders by way of a section 388 petition for modification.
[4] Section 291 provides, that with respect to jurisdiction and disposition hearings, "(d) The notice shall include all of the following: [¶] ... [¶] (2) The nature of the hearing." (See also In re Wilford J. (2005) 131 Cal.App.4th 742, 751, 32 Cal.Rptr.3d 317 [notice of hearing "`on the petition'" is insufficient notice of a pretrial resolution conference or jurisdiction hearing because all pretrial, jurisdictional and disposition hearings are "`on the petition'"].)

Because J.H. was detained and Father was not present at the detention hearing, the notice of the jurisdiction and disposition hearing was required to be by personal service or by certified mail, return receipt requested. (§ 291, subd. (e)(1).) The notice of the initial jurisdiction and disposition hearing on May 10, 2004, was sent to Father by certified mail, return receipt requested, but, as noted, there is no return receipt in the record.
[5] Subdivision (f) of section 294 provides: "Notice to the parents may be given in any one of the following manners: [¶] ... [¶] (2) Certified mail, return receipt requested, to the parent's last known mailing address. This notice shall be sufficient if the child welfare agency receives a return receipt signed by the parent."