Filed 2/10/15  In re Evelyn H. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re EVELYN H. et al., Persons Coming Under the Juvenile Court Law. | B255852<br>(Los Angeles County<br>Super. Ct. No. CK88230) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>J.H.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Marilyn Kading Martinez, Commissioner.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

_____

J.H. (father) appeals from juvenile court orders (1) denying his Welfare and Institutions Code section 388[1] petition, and (2) denying his request for more frequent visitation with his children, Evelyn H. (Evelyn, born Aug. 2010) and Jacob H. (Jacob, born Sept. 2011). He contends that the Department of Children and Family Services (DCFS) failed to exercise reasonable due diligence in locating and notifying him of the detention, jurisdiction, and disposition hearing on the section 300 petition filed on behalf of his children. Thus, all orders issued after the detention hearing should be vacated and a new hearing held. Secondarily, father argues that the juvenile court abused its discretion in denying his request for more frequent visits with Evelyn and Jacob.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Detention*

On December 3, 2012, DCFS filed a section 300 petition concerning the four children of Melody H. (mother). Father was alleged to be the father of Evelyn and Jacob only. His whereabouts were unknown and he was not named as an offending parent in the petition.

On November 30, 2012, DCFS initiated a due diligence search request for father.

*Jurisdiction/Disposition*

DCFS conducted another due diligence search in anticipation of the jurisdiction/disposition hearing on January 3, 2013. At that time, DCFS still listed father's whereabouts as "unknown." Although DCFS sent notices to mother and to the father of her two older children, DCFS did not send any notices to father.

All of the children were physically with mother at the time of the hearing, except Jacob, who was visiting his paternal grandmother in San Diego. However, mother did not have the paternal grandmother's address and telephone number to give to the social worker. Mother expected Jacob to return home on December 28, 2012. There was no

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

due diligence report attached to the jurisdiction/disposition report, but the dependency investigator attached the request for search form, which had already been submitted to the juvenile court. The information on the form included a driver's license number for father, information regarding a child support case involving him out of San Joaquin County, and a list of three addresses in Modesto, California, and one in Phoenix, Arizona. Mother stated that the fathers of the children had not visited the children or called them in about two years. The jurisdiction/disposition report did not include any attachments documenting that notices were sent to father at any of the addresses listed on the form.

Father did not appear for the jurisdictional hearing on January 3, 2013. The juvenile court found that notice had been given as required by law, sustained the section 300 petition, as amended, and declared all four children to be dependents of the court. However, the court declined to make any paternity findings at that time. The clerk of the juvenile court mailed a certificate of the court's minute order to mother at her last known address. The clerk's certificate listed the address of each father as "unknown."

*Section 342 Proceedings*

On February 6, 2013, DCFS filed a subsequent petition (§ 342), adding allegations against mother, but not against father. At that time, mother claimed she did not have any information about father, nor did DCFS have any contact information for him.

In its report prepared for the March 12, 2013, jurisdiction/disposition hearing on the subsequent petition, DCFS reported that father was living on Mace Place in Los Angeles. DCFS sent a notice of that hearing to father at the address on Mace Place.[2] Despite the address and telephone number, DCFS continued to state that father's whereabouts were unknown and reported that a due diligence search had been initiated for him. DCFS did not attach a copy of the due diligence report for father to its report, but attached a copy of notice to father at the Mace Place address. DCFS recommended that father not be offered reunification services.

---

[2] At the six-month review hearing on January 14, 2014, father told the juvenile court he had never lived on Mace Place.

The juvenile court continued the hearing several times, and sustained the subsequent petition, as amended, on May 13, 2013. Father was not present for that hearing.

*Six-month Status Review Hearing*

Father made his first juvenile court appearance at the six-month status review hearing on November 7, 2013. Steve Lory, an attorney from Los Angeles Dependency Lawyers 2 (LADL2), informed the court that he was available for appointment for father, but requested that if he were appointed, his appearance be a special appearance only because there were several issues, including notice, that needed to be investigated. The juvenile court continued the matter to January 14, 2014.

DCFS prepared a status review report in anticipation of the January 14, 2014, hearing. DCFS interviewed father on December 31, 2013. At the time of his interview, father was living in Wilmington. Father said he was interested in caring for his children, but the place where he was staying was not suitable for them. When asked how he would provide for the children financially, father replied that he had no job. Father had not visited the children since they had been placed in their current foster home. DCFS opined that it would not be in the children's best interest to give father reunification services because of his unstable living arrangements and lack of income.

On January 14, 2014, father appeared in juvenile court for the continued six-month hearing. Attorney Carolina Villamil of LADL2 made a special appearance on behalf of father. Father asked to have visits with his children. Ultimately, the juvenile court ordered monitored visits at the DCFS office once every other month as requested by the children's attorney. Father was advised to contact the social worker for visits.

At that time, the juvenile court commented that although LADL2 did not presently represent father, if LADL2 later did undertake to represent father "they should file a [section] 388 petition seeking appointment and asking for any modification of orders that I'm not modifying today. I am authorizing the visitation." The court ordered father to keep the court informed of his whereabouts, and directed Ms. Villamil to give father a copy of the appropriate form. The court advised father that if he changed his address and

4

did not keep the court informed of his current address, the "court could proceed in your absence and resolve issues against you, including terminating your parental rights." Later on in the hearing, father said he had been living in shelters for over a year until he moved to Wilmington two months before the hearing. Father said he had been "relocating for years already. Never been stable." Father also asked if he "could get some family reunification services so I could get some help." The court denied the request, stating, "We are beyond reunification."

Significantly, the juvenile court found father to be an alleged father of Jacob only.

Finally, the juvenile court then set a section 366.26 hearing. Father was ordered back for the hearing on April 22, 2014. He was also personally served with written notice of the next hearing.

*Section 388 Petition*

On February 24, 2014, father filed a section 388 petition alleging that the juvenile court, in the absence of proper notice and without appointing an attorney for father, declared the children dependents of the court and then pursuant to a subsequent petition and in the absence of proper notice removed the children from his custody and failed to address reunification services for him. He alleged that he had never lived on Mace Place, had only resided in Wilmington for two months, had lived in shelters, and was in San Diego for over a year prior to his current residence in Wilmington. He requested the juvenile court vacate all dispositional findings and orders regarding his children, thereby allowing his constitutional right to participate in proceedings.

A hearing was set on father's section 388 petition for April 10, 2014.

On February 27, 2014, DCFS provided the juvenile court with a copy of the due diligence report regarding father, dated March 12, 2013, and postmaster reports. Ms. Villamil was appointed generally to represent father, but she reserved the right to question prior notice to him.

On April 3, 2014, county counsel filed a response to father's section 388 petition. County counsel responded to father's case citations, argued that due process may be satisfied if there are efforts made reasonably calculated to provide notice, and asserted

5

that failure to comply with notice requirements may be harmless beyond a reasonable doubt.

DCFS also filed a formal response to father's section 388 petition. DCFS acknowledged that father had not been notified of the disposition hearing held pursuant to the 2012 section 300 petition, but said that his whereabouts were unknown. DCFS stated that the record revealed efforts were made by DCFS to obtain contact information for father. DCFS reminded the juvenile court that mother had said that father had not had any contact with the children or her for six months and that he lived in Tijuana, Mexico. Mother stated that she did not have contact information for father.

Attached to its response was a copy of the March 12, 2013, due diligence report. That report, which was prepared for the March 12, 2013, jurisdiction/disposition hearing, but was not signed until May 7, 2013, revealed that DCFS had postmaster responses regarding numerous possible addresses for father; not one turned out to be father's address.

DCFS also pointed out that father had advised the social worker that he had been informed about the court hearing regarding his children that was held on November 7, 2013, by the previous social worker. But, he failed to contact DCFS because he thought mother would maintain custody of the children.

Further, DCFS reminded the juvenile court about a prior case and reported that father had engaged in physical violence with mother while she was pregnant with Jacob. DCFS indicated that father also had a history of illicit drug use and there was no proof that he was free from that drug use. In short, father did not address the issues that brought the family to the attention of the court and did not comply with a treatment plan.

On April 10, 2014, the juvenile court addressed father's section 388 petition. His attorney argued that DCFS failed to present evidence of due diligence for the adjudications of the sections 300 and 342 petitions. She also argued that he was nonoffending under both petitions and that the juvenile court would have been required to consider section 361.2 at the disposition hearings. While she admitted that father had not

6

had a lot of visitation with his children, he had lost contact with mother. Finally, there was no evidence that he posed any risk to the children.

The children's attorney requested that the juvenile court deny father's section 388 petition. She argued that he knew there was a case, but he did not request custody of the children, assuming mother would get the children back. She also argued that there had been a due diligence completed, and she did not believe that it was in her clients' best interests to remove them from their current caregiver. She stated that the children were stable, that their caretaker wanted to adopt all of the children, and that her clients were receiving Regional Center services. She also noted that they had not had any contact with father.

In response, father's attorney argued that it was DCFS's duty to provide notice to father; it could not simply say that father was not involved with the children. She reiterated her client's request that the juvenile court return to the disposition hearing, allow father a contest on the disposition and custody of his children or, in the alternative, reunification services.

After entertaining oral argument, the juvenile court found that although DCFS did not submit a completed due diligence form and there were notice errors, DCFS did make some reasonable efforts to locate father. It found that the failure to provide actual notice was harmless error as the outcome of the hearings would not have been different. The juvenile court also noted that father had some contact with mother and that he could have gone to the court to obtain visitation with his children.

As for father's claim that he was nonoffending, the juvenile court stated that he did not have an automatic right to custody and that he did not have any relationship with the children. Thus, relitigation of the jurisdiction and disposition issues would not reasonably change the outcome. Moreover, father was often homeless and lacked a stable lifestyle.

Finally, the juvenile court commented that DCFS does not always have to provide actual notice, but must make reasonable efforts to do so. Meanwhile, the children were

enjoying permanence, mother's reunification services had been terminated, a section 366.26 hearing had been set, and father had surfaced late in the case.

Father was ordered to return on April 22, 2014, for the section 366.26 hearing.

*Section 366.26 Proceedings (Father's Request for More Visitation)*

DCFS reported that the four children continued to reside with their prospective adoptive parent, Ms. A.

After father's initial visit on February 10, 2014, DCFS reported that at another visit on April 15, 2014, father threatened Ms. A. and suggested that he would get someone to stalk her. Law enforcement was contacted about the incident. Ms. A. was fearful for her safety and the safety of her family and the children. She was reconsidering her commitment to permanency for the children. DCFS recommended that father's visits be monitored at the DCFS office.

Father appeared for the section 366.26 hearing. He submitted on the recommendation to continue the section 366.26 hearing, but asked for more frequent visitation. He disputed that he had threatened Ms. A. The juvenile court ordered that further visits occur at the DCFS office and ordered father not to have any contact with Ms. A. His visits remained at every other month.

The section 366.26 hearing was continued to August 4, 2014.[3]

*Appeal*

Father's timely appeal from the order denying his section 388 petition and the order denying more frequent visitation ensued.

## DISCUSSION

Preliminarily, we note that DCFS argues in its respondent's brief that father should be precluded from raising the issue of improper notice because he failed to raise it in his petition for extraordinary writ. Admittedly, father delayed in requesting the relief

---

[3] The section 366.26 hearing has been continued several times. At the hearing on December 16, 2014, the juvenile court gave DCFS the discretion to liberalize visits as to frequency and duration. The hearing was then continued once again.

8

he now seeks. But, in the interest of resolving issues on the merits, we decline to consider this argument and turn directly to the substance of father's claims.

I. *The juvenile court rightly denied father's section 388 petition*

Father contends that he was denied due process by the failure to provide him with notice of the proceedings. This lack of due process to father requires the setting aside of all orders made after the December 3, 2012, detention hearing and returning the case to jurisdiction and disposition.

A. Applicable law

"'Parents have a fundamental and compelling interest in the companionship, care, custody, and management of their children. [Citation.] "[T]he state also has an urgent interest in child welfare and shares the parent's interest in an accurate and just decision. [Citation.]" [Citation.] To ensure that result, "[u]ntil parental rights have been terminated, both parents must be given notice at each step of the proceedings. [Citation.]"'" (*In re J.H.* (2007) 158 Cal.App.4th 174, 182, quoting *In re DeJohn B.* (2000) 84 Cal.App.4th 100, 106; see also § 291, subd. (a)(2).)

"'At each hearing under section 300 et seq., the court must determine whether notice has been given as required by law and must make an appropriate finding noted in the minutes.' (Cal. Rules of Court, rule 5.534(k).)" (*In re J.H.*, *supra*, 158 Cal.App.4th at p. 182.)

"Notice is both a constitutional and statutory imperative. In juvenile dependency proceedings, due process requires parents be given notice that is reasonably calculated to advise them an action is pending and afford them an opportunity to defend." (*In re Jasmine G.* (2005) 127 Cal.App.4th 1109, 1114.) "The child welfare agency must act with diligence to locate a missing parent. [Citation.] Reasonable diligence denotes a thorough, systematic investigation and an inquiry conducted in good faith. [Citation.] [¶] However, there is no due process violation when there has been a good faith attempt to provide notice to a parent who is transient and whose whereabouts are unknown for the majority of the proceedings. [Citations.]" (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188.) "Thus, where a parent cannot be located notwithstanding a reasonable search

9

effort, the failure to give actual notice will not render the proceedings invalid." (*In re J.H.*, *supra*, 158 Cal.App.4th at p. 182, citing *In re Claudia S.* (2005) 131 Cal.App.4th 236, 247.)

"It is not always possible to litigate a dependency case with all parties present. The law recognizes this and requires only reasonable efforts to search for and notice missing parents. Where reasonable efforts have been made, a dependency case properly proceeds. If a missing parent later surfaces, it does not automatically follow that the best interests of the child will be promoted by going back to square one and relitigating the case. Children need stability and permanence in their lives, not protracted legal proceedings that prolong uncertainty for them. Further, the very nature of determining a child's best interests calls for a case-by-case analysis, not a mechanical rule." (*In re Justice P.*, *supra*, 123 Cal.App.4th at p. 191; see also *In re J.H.*, *supra*, 158 Cal.App.4th at pp. 182–183.)

"Unless there is no attempt to serve notice on a parent, in which case the error has been held to be reversible per se [citations], errors in notice do not automatically require reversal but are subject to the harmless beyond a reasonable doubt standard of prejudice." (*In re J.H.*, *supra*, 158 Cal.App.4th at p. 183.) And, "[c]onstitutional issues are reviewed de novo." (*Ibid.*)

B. <u>Analysis</u>

Here, the juvenile court rightly determined that even if there had been notice errors, DCFS made a diligent effort to locate and provide notice to father. The appellate record establishes that father moved frequently, making it difficult for DCFS to track him down.

And, there is no possibility that the result would have been different had father received notice earlier in the proceedings. Regarding Jacob, father was never found by the juvenile court to be anything other than an alleged father. As an alleged father, he only had the right to notice of the dependency proceedings; he had no other rights beyond the opportunity to bring an action to establish his identity as either a biological or presumed father of the child. (§ 316.2, subds. (b) & (d); *In re Ninfa S.* (1998) 62

10

Cal.App.4th 808, 811–812.) And, because father was only an alleged father, the juvenile court did not have the discretion to order reunification services for him. (*Glen C. v. Superior Court* (2000) 78 Cal.App.4th 570, 584–586.) In light of father's status as an alleged father, there would have been no different result.

Even if the juvenile court had found that father was the biological father of Jacob, he still would not have been entitled to reunification services automatically. It was within the juvenile court's discretion to order services if those services would benefit Jacob. (§ 361.5, subd. (a).) Given that father did not have a relationship with Jacob and father only had infrequent contact with him, there was no possibility that the juvenile court would have found that it would benefit Jacob to have reunification services with father.

Similarly, there is no possibility that the result would have been different for Evelyn. The juvenile court found, by clear and convincing evidence, that it would have been detrimental to place Evelyn with him. (§ 361.2, subd. (a); *In re Abram L.* (2013) 219 Cal.App.4th 452, 460–461.) And that finding is supported by the evidence. Father had substantiated allegations against him in 2011; he also had a history of illicit drug use, and there was no evidence that father was free from illicit drug use or that he completed any classes or programs to address this problem. Moreover, father knew of the dependency proceedings, but chose not to contact DCFS because he believed that mother would retain custody of the children. Father's lack of concern about his children's welfare amounts to negligence.

II. *The juvenile court rightly crafted its visitation order*

Father argues that the juvenile court abused its discretion by denying his request to have more frequent visits with Evelyn and Jacob.

In crafting a visitation order, the juvenile court must balance the rights of the parent with the best interests of the dependent child. (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757.) Visitation orders are reviewed for abuse of discretion. (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1704–1705.) The juvenile court has broad discretion to set the frequency and length of the visits and to impose any other conditions

on visitation consistent with the child's best interests. (*In re Shawna M.* (1993) 19 Cal.App.4th 1686, 1690.)

Here, the juvenile court allowed father visits every other month.[4] While we agree with father that visitation is an essential component of reunification, this case was not in reunification at the time of the order, and father has never been afforded reunification services.

Father argues that there is no evidence that he was a danger to the children. If father is suggesting that there was no showing of detriment, that requirement only is necessary if the juvenile court denies visitation altogether. (§ 361.5, subd. (f).) That is not what the juvenile court did.

The order for visitation every other month was appropriate for both Evelyn and Jacob.[5] Father's contact with the children had been infrequent at best. He had not had any contact with them for most of the duration of the underlying dependency case, even though he was aware of the proceedings, and his request for visits came at the same hearing in which the juvenile court was terminating mother's reunification services and setting a section 366.26 hearing to determine a permanent plan for the children.

Since father did not have any relationship with the children, now was not the time to try to establish one after the decision had been made to terminate efforts at reunification. Worse, father had threatened the children's stability and permanence by threatening Ms. A. at a visit, causing her to reconsider her commitment to permanency for the children. The children's best interests lie in allowing them to establish a familial relationship with Ms. A. or another appropriate caregiver, without interference from father. Visitation every other month significantly reduces the opportunity for father to interfere with that chance.

---

[4] As noted above, on December 16, 2014, the juvenile court granted DCFS discretion to liberalize those visits.

[5] As noted above, father was only an alleged father to Jacob; thus, visits with him were not legally required. (*In re Emily R.* (2000) 80 Cal.App.4th 1344, 1352; § 362.1, subd. (a)(1)(A).)

12

## DISPOSITION

The juvenile court's orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
          ASHMANN-GERST

We concur:

_____, P. J.
      BOREN

_____, J.
      CHAVEZ