Filed 8/16/16  In re S.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.G., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E065253 |
| Plaintiff and Respondent, | (Super.Ct.No. J255435) |
| v. | OPINION |
| M.A., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, Dawn M. Messer, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant M.A. (Mother) appeals from the summary denial of her petition for modification under Welfare and Institutions Code[1] section 388 as to her two-year-old son S.G. (the child).[2] We find Mother's petition failed to make an adequate showing triggering a right to a hearing, and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

The family has a history with the San Bernardino County Children and Family Services (CFS) dating back to 2008. The child's three half siblings were removed from Mother's custody in July 2008 due to Mother's substance abuse issues. After completing an inpatient drug treatment program and participating in family maintenance services, she eventually reunified with the half siblings. The half siblings' case was dismissed on June 1, 2010. Mother remained sober for three years after the half siblings were returned to her care.

On June 27, 2014, the child was taken into protective custody by CFS after he and Mother tested positive for methamphetamine at the time of his premature birth.[3] Mother initially denied using drugs but eventually admitted using marijuana and

---

[1] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Neither the father of the child nor the child's half siblings are parties to this appeal.

[3] The child was born at 33 weeks, and remained in the hospital for some time. He was later discharged but readmitted due to difficulty breathing.

methamphetamine a few days prior to the child's birth. Mother reported that she began using drugs when she was about 13 years old and that she stayed sober for several years. When asked why she started using again, she stated that "it was hard, and that she was bored."

H.G. (Father) reported that he knew Mother was using methamphetamine once a week during the pregnancy and repeatedly told Mother to stop. Mother, however, refused to listen to him. Father was unable to provide support for the child, and later turned himself in for outstanding arrest warrants. Mother also had an extensive criminal history involving drug-related offenses, theft, robbery, burglary, and driving under the influence. She also had outstanding arrest warrants for her failure to report to her probation officer. Mother dropped out of school in the eighth grade, and supported herself and the children by shoplifting. She had never been employed and currently had no source of income.

On July 1, 2014, CFS filed a petition on behalf of the child pursuant to section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). The child was detained and Mother was provided with supervised visitation and services.

On August 13, 2014, the juvenile court sustained the allegations in the petition, declared the child a dependent of the court, and provided Mother with reunification services.

Mother had been slow to start reunification services. She had been incarcerated twice for violating her probation; failed to start her outpatient drug treatment program despite several referrals; stopped attending drug court; and failed to randomly drug test.

3

However, upon her release from custody, on January 12, 2015, Mother entered an inpatient substance abuse program and was scheduled to complete it on March 12, 2015. Mother reported that she was pregnant again and that Father was the father of the unborn child.

Meanwhile, the child had been placed in the home of his great aunt, Ms. M., and was developing well. Mother and Father visited the child together weekly. Father would encourage Mother to hold and caress the baby during visits as it appeared Mother was unsure of what to do with the child at his age and stage of development.

At the February 27, 2015 six-month review hearing, the juvenile court continued Mother's services for an additional six months, and terminated Father's services for his failure to participate.

By the 12-month review hearing, CFS recommended terminating services for Mother and setting a section 366.26 hearing. Mother claimed that she had completed her inpatient drug treatment program, but CFS had no verification. In addition, although Mother's May 4, 2015 counseling progress report noted Mother had shown growth in regard to her substance abuse issues and in staying abstinent, Mother tested positive for methamphetamine on April 17, 2015.[4] Furthermore, in June 2015 Mother was placed on a contract with her outpatient substance abuse program due to her noncompliance; and in July 2015, Mother left her inpatient substance abuse program for fear of being arrested.

---

[4] Additionally, Mother and the child's new sibling tested positive for methamphetamine after the sibling's premature birth in June 2015.

Moreover, Mother failed to drug test 11 times for CFS from February to July 2015, and 12 times for probation from May to June 2015. She also had four positive random drug tests. Mother visited the child four or five times within the past few months; however, Ms. M. stated that Mother did not appear to have a bond with the child and would often not hold him or caress him unless she was encouraged to do so.

Mother was not present at the August 13, 2015 12-month review hearing. The juvenile court terminated Mother's reunification services and set a section 366.26 hearing.

CFS recommended that parental rights be terminated and a permanent plan of adoption be implemented for the child. The child was described to be in good physical health overall and a happy, active toddler, who ate and slept well. He was developing on target and meeting his developmental milestones. The child had been placed with Ms. M. since October 2014 at four months old, and was thriving in her home. The child appeared to have a parent-child relationship with Ms. M. He was very loving and affectionate with Ms. M. and looked to her to have his needs met. He called Ms. M. "ma" and they had developed a strong mutual attachment. Since November 2015, the child's sibling also resided with Ms. M., and Ms. M. was also willing to provide a permanent home for him if he did not reunify with his parents.

On January 6, 2016, Mother filed a section 388 petition requesting additional services with supporting documents. She claimed that she had completed a 10-hour parenting education program and an inpatient substance abuse program; that she had

made great strides in her recovery and mental fitness; and that it was in the child's best interest to be cared for by her because they loved each other. In a letter dated December 7, 2015, the case manager for the inpatient substance abuse program reported that Mother entered the program on September 28, 2015; that she continued to test negative for drugs; that she attended 12-step meetings weekly and was working on step 4; that she displayed a positive attitude towards treatment; that she understood the changes necessary for continued recovery; and that her motivation for change was her children. Mother completed the program on December 26, 2015. Mother's 12-step attendance card showed that Mother consistently attended the 12-step program from October 15 through December 17, 2015.

On January 7, 2016, the juvenile court summarily denied the section 388 petition. The court found that Mother's petition did not state new evidence or a change of circumstances and that the proposed change in order did not promote the best interest of the child. The court specifically noted the child had been out of Mother's custody since he was a few days old; that the child had been placed with Ms. M. since October 2014; and that the request did not state with specificity how the child's best interest would be promoted by the change in order. This appeal followed.

II

DISCUSSION

Mother argues the juvenile court erred in denying her section 388 petition without a hearing and affording her the opportunity to be heard.

6

Under section 388, a parent may petition the juvenile court to modify its previous orders upon the grounds of new evidence or changed circumstances. (§ 388, subd. (a).) The juvenile court may summarily deny a section 388 petition if the petition fails to make a prima facie showing of either (1) a change of circumstances or new evidence, or (2) that the requested change would promote the best interest of the child. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413-1414.) A hearing "is only to be held if it appears that the best interests of the child may be promoted by the proposed change of order, which necessarily contemplates that a court need not order a hearing if this element is absent from the showing made by the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 807.) We review the summary denial of a section 388 petition for abuse of discretion. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 460 (*Angel B.*).)

Even if Mother provided sufficient evidence of changed circumstances to warrant a hearing, she did not meet her burden of showing that granting her section 388 petition and reinstating reunification services was in the child's best interest. "[I]f a parent makes a prima facie showing of a change of circumstance such that a proposed change in custody might be in the child's best interest, then the juvenile court must hold a hearing." (*Angel B.*, *supra*, 97 Cal.App.4th at p. 461, italics omitted.) Whether Mother made a prima facie showing entitling her to a hearing depends on the facts alleged in her petition, as well as undisputed facts established by the court's own file, such as the child's age, the

7

nature of the existing placement, and when the child became a juvenile dependent. (*Ibid.*)

In *Angel B.*, *supra*, 97 Cal.App.4th 454, the court affirmed the juvenile court ruling denying the mother a hearing on her section 388 petition based on findings that the mother failed to make the requisite prima facie showing of changed circumstances and that the proposed change in custody was in the child's best interest. The court reasoned that, "there was no evidence that Mother was ready to assume custody of Angel or provide suitable care for her; while she had completed the drug program, the time she had been sober was very brief compared to her many years of drug addiction (a concern expressed by the social worker), and in the past she had been unable to remain sober even when the stakes involved were the loss of her other child. Nor was there evidence that she had a housing situation suitable for Angel, or any arrangements for child care while she worked. And . . . there was no evidence that Angel preferred to live with Mother rather than with the foster family." (*Angel B.*, at p. 463.)

Likewise, here, there was no evidence showing that granting Mother's section 388 petition was in the child's best interest. There was no evidence that Mother was ready to assume custody of the child or provide suitable care for him; while she had completed a drug program, the time she had been sober was very brief compared to her many years of drug addiction, and in the past she had been unable to remain sober even when the stakes involved were the loss of her children. Nor was there evidence that Mother had stable housing suitable for the child. There also was no evidence that Mother had a bond with

8

the child; rather, the record clearly demonstrates that the child was strongly attached to Ms. M. The child had formed a parent-child relationship with Ms. M. and referred to her as "ma." As noted by the juvenile court, the child was a few days old when he was removed from Mother's care and had been residing with Ms. M. since he was four months old. The child was nearly 19 months old at the time the section 388 petition was denied, and had lived with Ms. M. for most of his young life.

In addition, as explained in *Angel B.*, "a primary consideration in determining the child's best interest is the goal of assuring stability and continuity. [Citation.] When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role. [Citation]. That need often will dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child." (*Angel B.*, *supra*, 97 Cal.App.4th at p. 464.)

The court in *Angel B.* noted that the burden of proof "is a difficult burden to meet in many cases, and particularly so when, as here, reunification services have been terminated or never ordered. After the termination of reunification services, a parent's interest in the care, custody and companionship of the child is no longer paramount. [Citation.] Rather, at this point, the focus shifts to the needs of the child for permanency and stability. [Citation.] In fact, there is a rebuttable presumption that continued foster care is in the best interest of the child [citation]; such presumption obviously applies with even greater strength when the permanent plan is adoption rather than foster care. A court hearing a motion for change of placement at this stage of the proceedings must

9

recognize this shift of focus in determining the ultimate question before it, that is, what is in the best interest of the child." (*Angel B.*, *supra*, 97 Cal.App.4th at p. 464.)

Here, Mother's section 388 petition was essentially made on the eve of the section 366.26 hearing. At that point, the child's stability was the court's foremost concern and outweighed any interest in reunification. The prospect of an additional six months of reunification to see if Mother would and could do what was required to regain custody would not have promoted stability for the child, and thus would not have promoted the child's best interest. (*Angel B.*, *supra*, 97 Cal.App.4th at p. 464.)

In *Angel B.*, the facts presented by the section 388 petition showed that the mother was "doing well, in the sense that she has remained sober, completed various classes, obtained employment, and visited regularly with Angel." (*Angel B.*, *supra*, 97 Cal.App.4th at pp. 464-465.) The *Angel B.* court also assumed, for the sake of the appeal, that the mother's resolve was different, and that she would be able to remain sober, remain employed, become self-supporting and obtain housing. Even so, the *Angel B.* court found that such facts were not legally sufficient to require a hearing on her section 388 petition. (*Angel B.*, at pp. 464-465.) The court reasoned that "there is a rebuttable presumption that, in the absence of continuing reunification services, stability in an existing placement is in the best interest of the child, particularly when such placement is leading to adoption by the long-term caretakers. [Citation.] To rebut that presumption, a parent must make some factual showing that the best interests of the child would be served by modification." (*Id*. at p. 465.)

10

Here, as in *Angel B.*, mother did not make such a showing. She did not present any evidence that delaying adoption by providing Mother with additional reunification services was in the child's best interest. We therefore conclude the juvenile court did not abuse its discretion in summarily denying Mother's section 388 petition.

Mother suggests that the court's summary denial of her petition violated her due process rights. Mother is mistaken. Mother did not make a prima facie showing under section 388 to be afforded with a full hearing on her petition. Furthermore, the social worker's reports in this case do not contradict Mother's factual allegations and no credibility issues require resolution. (See *In re Clifton V.* (2001) 93 Cal.App.4th 1400, 1405 [concluding summary denial of hearing on section 388 petition was a denial of due process because there was "a clear credibility contest" between representations by parents and social services agency that required live testimony].) Mother was not denied her due process rights.

III

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

CODRINGTON
J.

11