Filed 8/17/20  In re G.B. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re G.B., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B303318 (Super. Ct. No. J071718) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>L.B.,<br><br>     Defendant and Appellant. | |

L.B. (Mother) appeals from the juvenile court's order summarily denying her petition to change the court's order terminating her visitation and reunification services.  (Welf. & Inst. Code,[1] § 388.)[2]  We affirm.

_____

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL HISTORY

In January 2018, Ventura County Human Services Agency (the Agency) received a referral alleging that Mother refused to comply with recommended medical treatment for her daughter, G.B., who had cancer. At a contested dispositional hearing, the juvenile court declared G.B. a dependent of the court.

Mother received 12 months of reunification services. During that time, Mother "minimally participated" in her case plan and exhibited behavioral issues. Before the 12-month hearing, Mother "engaged in inappropriate conversation" with G.B.'s then-foster parents, and the court issued a restraining order protecting the foster parents from Mother.

In February 2019,[3] Mother yelled at a caseworker and grabbed her hand during a visit. Mother also pulled a backpack off the caseworker's shoulder and pulled the lanyard hanging around her neck. The court suspended Mother's visits and issued a restraining order protecting the caseworker from Mother.

In May, the juvenile court terminated Mother's reunification services and visitation. Mother petitioned for a writ of mandate, challenging the order terminating her reunification

---

[2] Mother's notice of appeal states that she is appealing the order terminating her parental rights, but her brief challenges only the order denying her section 388 petition. She requested that we construe the notice of appeal to include the order denying her section 388 petition. We granted her motion.

[3] Further dates mentioned hereafter are in 2019.

services.  (§ 366.26.)  We denied the petition.  (*L.B. v. Superior Court* (Sept. 24, 2019, B297489) [nonpub. opn.].)

A month later, Mother requested a restraining order to protect Mother and G.B. from G.B.'s paternal uncle (Uncle).  Although G.B. was placed with a "confidential relative" (Caregiver), Mother believed G.B. was placed with Uncle.

Mother went to Uncle's home to serve an "informal typed note indicating that he [was] noticed" of her request for a restraining order against him.  While she was standing on the front porch, Mother saw G.B. and said "Hi Baby, I love you."  Subsequently, the juvenile court issued a restraining order protecting G.B. and Caregiver from Mother.

Two weeks later, Mother told a caseworker that she knew where G.B. was placed.  The caseworker reminded Mother that she was "court ordered not to locate the child's placement" and that the Agency would not confirm or deny any details regarding the placement.  The caseworker also told Mother that she was "not allowed to include [G.B.] into any . . . restraining order[] due to the current restraining order against" Mother.  Mother was "aggressive throughout the phone call, and insisted that [the caseworker] not speak and only listen."  Later that month, the caseworker discovered that Mother moved from her last known address and declined to provide her current one.

In August, Mother posted on her Facebook account that she will have "Peanut" (G.B.'s nickname) again and will remind G.B. "every day of the parents' struggles."  The Agency was informed that Mother wrote an e-mail to a previous caregiver stating that she wanted "to put all of you 'cycle' [*sic*] foster people into one little basket then drop the bomb."  In September, a social worker from the hospital where G.B. was treated said that

Mother went to the hospital and requested G.B.'s medical records and asked to speak with G.B.'s current physician about putting her on CBD oil.

The section 366.26 report recommended that Mother's parental rights be terminated and that adoption be selected as the permanent plan. The report stated that Mother's most recent visit was in February. Her visits were terminated in May due to the court "finding visits to be detrimental" to G.B. The report stated that G.B., who had been living with Caregiver since January, was "thriving." G.B. was participating in therapy and was "up to date" on medical exams and check-ups. G.B. appeared "to be forming a strong attachment" to Caregiver and their spouse, referred to them as "mommy and daddy," and stated that she wanted "to live with [them] forever." The Caregiver was "100% committed" to adopting G.B.

In November, Mother petitioned the juvenile court pursuant to section 388, requesting that the court change the order terminating her visitation and reunification services. Mother submitted a declaration in which she stated there were "new circumstances." She declared that she continued to participate in services and programs designed to treat her behavioral and emotional issues. She also participated in weekly "one-on-one faith-based counseling" with her priest, and she attached a letter from him. She stated she meets weekly with her "step program" and has an accountability partner. She attached informational pages about the step program and text messages to and from her accountability partner. Mother also attached "therapy letters" which she wrote but did not send to the addressees.

She "made arrangement[s] to continue [her] weekly sessions with a liscened [*sic*] therapist" beginning in December. She attached general information about the therapist. Mother also stated that she completed an application to become a member of the Santa Barbara Wellness Center, which offers programs such as art, music, and group therapy.

Mother stated she has a "new increase in self esteem, empowerment, and overall well-being, in turn, preventing any risk of conflict." Mother also reported that she had a "new job as a trained respite caregiver." She attached a letter from one of her clients and a time sheet verifying employment from July through October. She also attached a letter from her landlord verifying that she has been renting a room since September.

Mother stated that she was "aware that [G.B. was] forming new bonds and [she] does not resent these bonds." She was not "asking the court to resume" visits with G.B.

Lastly, Mother mentioned G.B.'s father had died. She stated she was aware of the "home environment that he and his brother shared, involved alcohol and drug abuse, and physical abuse." She was concerned about Uncle "or any . . . close family member which may be caring for [G.B.]"

The juvenile court summarily denied Mother's section 388 petition on the ground that reinstatement of visits and services "does not promote the best interest of the child."

A month later, the juvenile court held a section 366.26 hearing. It terminated Mother's parental rights and chose adoption as the permanent plan. It also made permanent the temporary restraining order to protect G.B. and Caregiver.

## DISCUSSION

Mother contends the juvenile court erred when it summarily denied her section 388 petition without an evidentiary hearing. She argues she made a prima facie showing that reinstatement of visits and reunification services was in the best interest of G.B. We disagree.

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child. [Citation.] A parent need only make a prima facie showing of these elements to trigger the right to a hearing on a section 388 petition and the petition should be liberally construed in favor of granting a hearing to consider the parent's request. [Citation.]" (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) "[I]f the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition." (*Ibid.*; see Cal. Rules of Court, rule 5.570(d)(1).) We review for abuse of discretion. (*In re S.R.* (2009) 173 Cal.App.4th 864, 870.)

When reunification services have been terminated and a section 366.26 hearing set, the focus of the case shifts from the parents' interest in the care, custody, and companionship of the child to the needs of the child for permanency and stability. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) The child's best interests "are not to further delay permanency and stability in favor of rewarding" the parent for their "hard work and efforts to reunify." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.)

6

To warrant relief under section 388, the change of circumstances or new evidence "must be of such significant nature that it requires a setting aside or modification of the challenged prior order." (*Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 485; see *In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1451.) "A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47 (*Casey D.*).) In assessing the petition, the juvenile court may consider the entire history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189.)

The juvenile court did not abuse its discretion when it found Mother did not make a prima facie showing that her circumstances had changed. First, although Mother submitted evidence of her rehabilitation, other evidence was to the contrary. Mother posted on her Facebook page that she would soon reunite with G.B. and tried to obtain G.B.'s medical records and contact her doctors, despite the existence of a restraining order prohibiting such conduct. Mother continued to act aggressively and uncooperatively with social workers and wrote an e-mail to G.B.'s former caregivers stating that she wants to put them "into one little basket then drop the bomb." Mother attempted to obtain a restraining order against Uncle when she believed that he was Caregiver. She went to his house to serve an informal notice of a restraining order, which led to the third restraining order against her in these proceedings.

Although Mother's evidence showed she was participating in some counseling and services, and "made arrangement[s]" to continue therapy and participate in another program in the future, that evidence showed "merely changing circumstances," rather than the "changed circumstances" required for a hearing on a section 388 petition. (*Casey D.*, *supra*, 70 Cal.App.4th at p. 47.)

Mother did not prove that changing the prior order would be in G.B.'s best interest. Even assuming Mother was beginning to rehabilitate, "'[c]hildhood does not wait for the parent to become adequate.' [Citation.]" (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610.) G.B., who was three years old at the time of the petition, had been living with Caregiver for almost one year—a significant period of her life. Mother had not visited G.B. since February, and G.B. exhibited no distress as a result. To the contrary, G.B. was "thriving" in her new home and "forming a strong attachment" to Caregiver, who was committed to adoption. In sum, delaying permanency for G.B. to see if Mother would be able to rehabilitate was not in the best interests of G.B. (*Casey D.*, *supra*, 70 Cal.App.4th at p. 47.) There was no abuse of discretion.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

TANGEMAN, J.

We concur:

YEGAN, Acting P. J.

PERREN, J.

8

Tari L. Cody, Judge

Superior Court County of Ventura

_____

Caitlin Christian, under appointment by the Court of Appeal, for Defendant and Appellant.

Leroy Smith, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Plaintiff and Respondent.