Filed 10/22/20  In re I.V. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re I.V., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E075255 |
| Plaintiff and Respondent, | (Super.Ct.No. J278703) |
| v. | OPINION |
| E.V., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Joanne D. Willis Newton, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, David Guardado, Deputy County Counsel for Plaintiff and Respondent.

1

Defendant and appellant E.V. (Mother) appeals the order terminating her parental rights to I.V. (Minor) at a Welfare and Institutions Code section 366.26 hearing.[1] Mother claims on appeal that she was not properly noticed of the continued section 366.26 hearing in violation of both her state and federal Constitutional rights of due process and that such defective notice is reversible per se error.

## FACTUAL AND PROCEDURAL HISTORY

### A.    DETENTION

On November 2, 2018, it was reported that Mother had been arrested for committing assault with great bodily injury and there were concerns about the care of Minor (a girl, born February 2018).  Mother was released from the San Bernardino County Detention Center on November 7, 2018, but could not be reached because she did not have a working telephone number and had moved.

On November 15, 2018, Mother's sister J.V. (Sister) reported that she was caring for Minor while Mother was incarcerated.  Sister was concerned because Mother wanted to have Minor returned to her care but Sister was concerned Mother was unable to care for Minor.  Sister reported that when she first took custody of Minor, Minor's car seat was filled with cockroaches, she was unkempt, and she had a fever.  Minor was diagnosed with a urinary tract infection.  The Department set up a meeting at one of its offices for Mother and Sister to transfer custody of Minor.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Mother arrived at the meeting at the Department on November 15, 2018; she appeared to be under the influence. As for the reason for her arrest, Mother reported that she and her " 'significant other' " had gotten into an altercation. He had become physical with her and she hit him with a bottle. Minor was present during the altercation. Mother would not name her signification other, but the Department was aware from a prior referral in May 2018 that Mother had identified S.A. (Boyfriend) as Minor's father. Mother also reported being diagnosed with bipolar disorder but she was not taking her medication. The next day Mother admitted to being under the influence at the meeting. Minor was detained.

On November 20, 2018, the Department filed a section 300 petition (Petition) for Minor against Mother and two potential fathers, Boyfriend and J.P. It was alleged pursuant to section 300, subdivision (b)(1), failure to protect, that (1) Mother had been diagnosed with bipolar disorder but did not take her medication putting Minor at substantial risk of physical and emotional harm; (2) Mother and Boyfriend both engaged in domestic violence in the presence of Minor; (3) Mother suffered from a substance abuse problem impairing her ability to properly care for Minor; and (4) Boyfriend failed to protect Minor despite knowing (or he reasonably should have known) of Mother's substance abuse problem. It was alleged against Boyfriend pursuant to section 300, subdivision (g), his whereabouts were unknown leaving Minor without adequate care and support.

The detention hearing was conducted on November 21, 2018. Mother was present. Mother stated that Minor's father was J.P. and not Boyfriend; however, Boyfriend and Mother were living together with Minor and he took responsibility for Minor.

The juvenile court admonished Mother that she needed to provide a current address and that she must keep in touch with the Department. The failure to do so could result in her losing custody of Minor without Mother being present. Minor was detained and placed with a non-relative extended family member, Ms. R. Mother provided her mailing address on Parkside Drive in San Bernardino.

B.     JURISDICTION/DISPOSITION REPORTS AND HEARING

The jurisdiction/disposition report was filed on December 10, 2018. The Department recommended that the section 300, subdivision (b), allegations in the Petition against Mother be found true. It was recommended that Mother be granted six months of reunification services and Boyfriend and J.P. be found alleged fathers, not entitled to services. The Department recommended that Minor remain with Ms. R. The Petition was amended to add J.P. and an allegation pursuant to section 300, subdivision (g), that his whereabouts were unknown.

Mother was interviewed on December 5, 2018. Mother had been diagnosed with bipolar disorder when she was 14 years old. She took medication for one year but then quit taking it. She had a history of cutting herself. Mother gave further details of the domestic violence incident with Boyfriend. Boyfriend had been mad at her and would not let her leave the house with Minor. He pinned her to the ground and kicked her. She

4

hit him in the head with something to get him off her. She was arrested and charges were brought against her and not Boyfriend. Boyfriend had hit her on prior occasions. She had also been involved in domestic violence with J.P. Mother admitted smoking marijuana when she went to the Department to pick up Minor from Sister. Mother denied using any drugs other than marijuana.

Mother had a positive drug test on November 21, 2018, for marijuana and amphetamines. Mother claimed that Boyfriend gave her something to drink before the drug test and it must have contained amphetamines. Neither J.P. nor Boyfriend had contacted the Department during the reporting period. Mother was living with her paternal grandparents and they were her main support system. Mother had been placed in foster care when her own mother died and her father (MGF) was drinking too much. MGF lived in Mentone and Sister lived with him.

The jurisdiction/disposition hearing was conducted on December 12, 2018. Mother admitted the allegations in the Petition. The juvenile court found the allegations against Mother in the Petition to be true. The juvenile court named Boyfriend and J.P. as alleged fathers but they were not entitled to reunification services. The juvenile court admonished Mother that she had six months to reunify with Minor or she would lose custody. Mother was ordered back on June 12, 2019, and was advised if she was not present, the court would proceed without her.

C.     STATUS REVIEW HEARINGS

The six-month status review report was filed on June 6, 2019. The Department recommended six additional months of reunification services. Minor remained in the

5

custody of Ms. R. During the reporting period, Mother had been inconsistent in visiting and completing her reunification services. Mother claimed she had difficulty meeting her case plan due to taking college courses and working. Mother had not provided verification of school enrollment or employment to the Department.

Mother had completed her parenting and domestic violence classes. She had failed to enroll in an outpatient substance abuse program, despite being referred and offered transportation. She had not been consistent in attending random drug testing and had not attended a psychiatric evaluation. Mother had failed to drug test seven times; she had three negative drug tests. She had missed several individual therapy sessions and it was recommended that she attend more sessions. Mother reportedly moved to Riverside and was starting a new job.

The Department gave notice of the six-month status review hearing to Mother at the Parkside Drive address. Mother was not present at the status review hearing but was represented by counsel. The juvenile court continued reunification services for six months.

The 12-month status review report was filed on November 18, 2019. The Department recommended that reunification services for Mother be terminated and that a section 366.26 hearing be set with a permanent plan of adoption. The Department reported that Mother had not completed her reunification services. Mother had completed an outpatient substance abuse program on September 16, 2019; tested negative for controlled substances on four occasions; finished her parenting and domestic violence classes on April 24, 2019; and attended two of her eight recommended therapy sessions.

6

She had missed 10 random drug tests and had not addressed her mental health problems. She had two positive tests for cocaine in July 2019.

Mother moved several times during the reporting period. She still had not provided proof of employment. It was reported to the Department that she had been involved in an altercation with MGF and hit him over the head with a guitar in September 2019. Mother also had healing scars on her arms, which were indicative of her recently engaging in cutting. Mother had received a settlement from a car accident in May 2019 but she had quickly spent all of the $68,000 that she received. Mother had missed nine visits with Minor. Mother was affectionate with Minor during the visits she attended but was oftentimes late or left early.

Minor had been placed with Ms. R since she was detained on November 15, 2018. Ms. R was willing to adopt Minor.

The 12-month review hearing was conducted on November 27, 2019. Mother was not present. Mother's counsel objected to the termination of reunification services but had no affirmative evidence. The juvenile court terminated Mother's reunification services and set a section 366.26 hearing for March 26, 2020. Mother was served at the Parkside Drive address with the notice that she could file a writ petition.

D.    SECTION 366.26 REPORT

On January 13, 2020, the Department filed a notice of hearing on selection of permanent plan on, which it served on Mother—by substitute service on Sister—on December 29, 2019, at an address on Malachite Avenue in Mentone. It was also mailed to the same address. Sister advised the process server that Mother lived at the address but

7

was not home. A notice review hearing was conducted on January 17, 2020. The Department noted that Mother was not present for the date of the setting of the section 366.26 hearing but had been served by substitute service on December 29, 2019. The juvenile court confirmed that the date of the section 366.26 hearing was set for March 26, 2020.

On February 5, 2020, the Department filed a notice of hearing on selection of permanent plan, which it had sent to Mother for the March 26 section 366.26 hearing. It was mailed to Mother at the Parkside Drive and Malachite Avenue addresses, and a third address in San Bernardino.

On March 26, 2020, the matter was continued by the juvenile court to April 16, 2020, pursuant to the general order regarding implementation of emergency relief (Gov. Code, § 68115) issued by the Judicial Council on March 17, 2020. The emergency was the Covid-19 pandemic. On April 16, 2020, the Welfare and Institutions Code section 366.26 hearing was again continued due to the pandemic. There are no documents in the record showing these continuances were served on Mother, as the juvenile court continued the hearing on its own motion.

On June 3, 2020, the Department filed its notice of hearing on selection of permanent plan, which it served on Mother for the June 25 continued section 366.26 hearing. Mother was again served at the three aforementioned addresses; it was mailed May 26, 2020.

On June 20, 2020, the Department filed its section 366.26 report. Minor was now two years old. The Department recommended that Mother's parental rights be terminated and that Minor be freed for adoption. Minor was developing normally. She was a friendly and engaging two year old. Minor looked to Ms. R for affection and for other needs. Ms. R was friends with Mother's family and could continue to allow Mother and her family contact with Minor if appropriate. Mother had not been visiting with Minor.

The section 366.26 hearing was held on June 25, 2020. Mother was not present at the hearing but was represented by counsel. The juvenile court noted that it had a notice in the file for the June 25, 2020, hearing. Counsel for the Department noted that a notice hearing was conducted on January 17, 2020, and it was found that adequate notice was given for the original section 366.26 hearing, which was to be held on March 26, 2020. Further, the juvenile court had record of the follow-up notice for the continued hearing. Mother's counsel objected to the termination of parental right but had no affirmative evidence. The juvenile court terminated Mother's parental rights, and the rights of Boyfriend and J.P., and freed Minor for adoption.

A notice of appeal was filed and signed by Mother. She listed her address as being on Reedy Avenue in Highland. It was filed on June 25, 2020, and purported to be from the hearing held on June 24, 2020, the termination of parental rights.

**DISCUSSION**

Mother contends she was not properly served with the notice of the continued section 366.26 hearing constituting reversible per se error and remand for a new section 366.26 hearing is required. Specifically, she claims the substitute service for the original

9

section 366.26 hearing was improper as it was not served at her "usual" address, and the subsequent mailed notice for the continued section 366.26 hearing did not comply with section 294.

"Parents have a fundamental and compelling interest in the companionship, care, custody, and management of their children. '[T]he state also has an urgent interest in child welfare and shares the parent's interest in an accurate and just decision. [Citation.]' [Citation.] To ensure that result, '[u]ntil parental rights have been terminated, both parents must be given notice at each step of the proceedings. [Citation.]' The notice must comport with due process." (*In re DeJohn B.* (2000) 84 Cal.App.4th 100, 106.)

" 'Notice is both a constitutional and statutory imperative. In juvenile dependency proceedings, due process requires parents be given notice that is reasonably calculated to advise them an action is pending and afford them an opportunity to defend.' [Citation.] 'The child welfare agency must act with diligence to locate a missing parent. [Citation.] Reasonable diligence denotes a thorough, systematic investigation and an inquiry conducted in good faith. [Citation.] [¶] However, there is no due process violation when there has been a good faith attempt to provide notice to a parent who is transient and whose whereabouts are unknown for a majority of the proceedings.' " (*In re J.H.* (2007) 158 Cal.App.4th 174, 182 (*J.H.*).) "Constitutional issues are reviewed de novo." (*Ibid.*)

Section 294 specifies the necessary procedures for service of notice for a section 366.26 hearing. Notice must be given to the mother of the child and all counsel of record. (§ 294, subds. (a)(1) & (a)(8).) "Service of the notice shall be completed at least 45 days before the hearing date. Service is deemed complete at the time the notice is

personally delivered to the person named in the notice or 10 days after the notice has been placed in the mail or sent by electronic mail, or at the expiration of the time prescribed by the order for publication." (§ 294, subd. (c)(1).)

Notice to the parents can be given by "Delivery to a competent person who is at least 18 years of age at the parent's usual place of residence or business, and thereafter served on the parent named in the notice by first-class mail at the place where the notice was delivered or by electronic service pursuant to Section 212.5." (§ 294, subd. (f)(4).)

Further, "Regardless of the type of notice required, or the manner in which it is served, once the court has made the initial finding that notice has properly been given to the parent, . . . subsequent notice for any continuation of a Section 366.26 hearing may be by first-class mail to any last known address, . . . or by any other means that the court determines is reasonably calculated, under any circumstance, to provide notice of the continued hearing." (§ 294, subd. (d).)

Here, the Department noticed Mother of the first section 366.26 hearing by serving Sister with the notice at the Malachite Avenue address, on December 29, 2019, for the March 26, 2020, hearing. Sister acknowledged that Mother lived at that address. It was reasonable for the Department to serve Mother at this location as they knew that MGF lived at the location, and that Mother and MGF had been involved in an altercation in September 2019. The notice was also mailed to that address on February 5, 2020, which was 50 days prior to the hearing. There was a notice hearing and the juvenile court affirmed that proper notice of the section 366.26 hearing was given to Mother. It was undisputed that Mother was moving around during the dependency proceedings, and no

11

other evidence was presented to contradict that she had moved in with MGF and Sister. The notice to Mother regarding the original section 366.26 hearing, to be held on March 26, 2020, was proper.

Thereafter, the Department sent Mother notice of the continued section 366.26 hearing by mail at three different addresses. The Department served the notice on May 26, 2020, for the June 25, 2020, hearing. This 30-day notice did not comply with the notice requirement of section 294, subdivision (c)(1).

The Department argues that Mother has waived any claim that this violated her due process rights because she was represented by counsel at the section 366.26 hearing, and her counsel made no objection and did not raise the issue that the notice was defective at the continued section 366.26 hearing.

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. . . . [¶] Dependency matters are not exempt from this rule." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted.) In *In re Z.S.* (2015) 235 Cal.App.4th 754, the father argued that his right to due process was violated by inadequate notice of the termination hearing. The court found, "Father was represented throughout, and his counsel acknowledged at the hearing that notice to father had been found proper, and did not argue that father did not receive notice. This waives his argument that notice was defective. Even '[a]ssuming proper notice was not given, [the father]'s failure to raise the defect at the . . . hearing constitutes waiver of the issue on appeal.' " (*Id.* at p. 771.)

12

Here, Mother was represented by counsel, who appeared at the continued section 366.26 hearing on June 25, 2020. Although the trial court noted that Mother's counsel had expressed concern regarding the notice to Mother due to the ongoing pandemic, it confirmed that there was proof of notice in the file. Mother's counsel did not object further or claim that the notice was defective. As such, Mother waived any claim that her due process rights were violated by defective notice for the continued section 366.26 hearing.

Mother claims this court should find that she has not forfeited her objection to the trial court proceeding with the section 366.26 hearing because an off-the-record objection on lack of notice was made. However, this court can only determine from the record that Mother's counsel had asked about the notice prior to the hearing on the record, but it is not clear counsel objected to the proceedings going forward that day due to lack of notice. We will not speculate that an appropriate objection was made off the record.

Even if the notice was deficient, and Mother is found not to have waived any objection to the notice, such error was harmless. (*In re A.D.* (2011) 196 Cal.App.4th 1319, 1325 ["a failure to give notice in dependency proceedings is subject to a harmless error analysis"].) "If the outcome of a proceeding has not been affected, denial of a right to notice and a hearing may be deemed harmless and reversal is not required." (*In re James F.* (2008) 42 Cal.4th 901, 918.)

Mother insists that in the "absence of any reasonable attempt to give notice," such error is reversible per se. Mother additionally recognizes that not all notice errors require

13

automatic reversal and that some notice errors are subject to harmless beyond a reasonable doubt review.

"The harmless error analysis applies in juvenile dependency proceedings even where the error is of constitutional dimension." (*In re J.P.* (2017) 15 Cal.App.5th 789, 798, fn. omitted.) Reversible per se error was only indicated if there was no attempt to serve notice on a parent. (*J.H.*, *supra*, 158 Cal.App.4th at p. 183.) Here, the Department made numerous attempts to notice Mother. Mother had proper notice of the original section 366.26 hearing. (*In re Angela C.* (2002) 99 Cal.App.4th 389, 395 [reversible per se error standard not applicable for failure to notice Mother of the continued section 366.26 hearing, based on Mother participating in some previous proceedings and being noticed of the original section 366.26 hearing].) Moreover, Mother had some indication of the section 366.26 hearing as evidenced by her executing her own notice of appeal, which was filed on the day of the section 366.26 hearing. The reversible per se error standard does not apply.

Several appellate courts have applied the harmless beyond a reasonable doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 24, in determining whether defective notice requires reversal. (*J.H.*, *supra*, 158 Cal.App.4th at p. 183; *In re Justice P.* (2004) 123 Cal.App.4th 181, 183.)[2]

---

[2] In *In re A.J.* (2019) 44 Cal.App.5th 652, the appellate court noted the California Supreme Court has applied the *Watson* standard requiring a showing of a reasonable probability of a more favorable outcome to constitutional errors in some dependency cases. (*Id.* at pp. 665-666.) We need not determine if the *Watson* standard may be applicable here as the Department has conceded that *Chapman* applies, and the result would be the same under either standard.

Mother makes no argument as to how the proceedings would have been different had she been present at the section 366.26 hearing. At the section 366.26 hearing, Minor was found to be generally and specifically adoptable. "The primary issue in a section 366.26 hearing is whether the dependent child is likely to be adopted." (*In re Angela C.*, *supra*, 99 Cal.App.4th at p. 395.) Since Minor was found to be adoptable, Mother had the burden of showing that termination of her parental rights would be detrimental under one of the statutory exceptions to adoption in section 366.26, subdivision (c)(1)(B). The only conceivable exception that could apply in this case was the beneficial parent exception of section 366.26, subdivision (c)(1)(B)(i), which requires that "the parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (See also *Angela C.*, at p. 396.)

The record is clear that Mother was inconsistent in visitation and had not visited in the months leading up to the continued section 366.26 hearing. Mother could not meet the first prong of the exception to adoption.

Moreover, at the time Mother had her reunification services terminated, she had tested positive for cocaine and failed to address her mental health problems. Mother had custody of Minor for approximately eight months before Minor was detained. Mother visited irregularly and had spent little time with Minor during Minor's two years of life. There was no evidence of a parental bond between Mother and Minor, or that it would be in Minor's best interest to be returned to Mother's custody. As such, even if Mother had been present at the section 366.26 hearing, it is clear beyond a reasonable doubt that her parental rights would still have been terminated.

# DISPOSITION

The juvenile court's order terminating Mother's parental rights is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
Acting P. J.

We concur:

CODRINGTON _____
J.

MENETREZ _____
J.

16