Filed 2/19/26  Anna K. v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ANNA K., | |
| Petitioner, | F090767 |
| v. | (Super. Ct. No. 24JP-00090-A) |
| THE SUPERIOR COURT OF MERCED COUNTY, | **OPINION** |
| Respondent; | |
| MERCED COUNTY HUMAN SERVICES AGENCY, | |
| Real Party in Interest. | |

## THE COURT[*]

ORIGINAL PROCEEDINGS; Petition for Extraordinary Writ.  Mark V. Bacciarini, Judge.

Anna K., in pro. per., for Petitioner.

No appearance for Respondent.

---

[*]    Before Levy, Acting P. J., Peña, J. and DeSantos, J.

Forrest W. Hansen, County Counsel, and Ann Hanson, Deputy County Counsel; Gordon-Creed, Kelley, Holl & Sugerman LLP, Jeremy Sugerman and Anne H. Nguyen for Real Party in Interest.

-ooOoo-

Petitioner Anna K. (mother), in propria persona, seeks an extraordinary writ (Cal. Rules of Court,[1] rule 8.452) from the juvenile court's orders made at a combined six- and 12-month review hearing held pursuant to Welfare and Institutions Code[2] section 366.21, subdivisions (e) and (f), setting a section 366.26 hearing for her minor daughter, A.K. She contends she was not properly noticed of the review hearing, at which she was not present but was represented by counsel, in violation of her due process rights.[3]

We deny the petition and lift the stay on the section 366.26 hearing filed on January 27, 2026.

## FACTUAL AND PROCEDURAL BACKGROUND

### Petition and Detention

In August 2024, real party in interest, the Merced County Human Services Agency (agency), filed a juvenile dependency petition on behalf of A.K. alleging she came within the juvenile court's jurisdiction pursuant to section 300, subdivisions (a) (nonaccidental serious physical harm), (b)(1) (failure to protect), (c) (serious emotional damage), and (g) (no provision for support).

A.K. was living with her legal guardian, M.K. (guardian), who is also her maternal grandmother, at the time of her initial detention. The petition specifically alleged that

---

[1]    All further rule references are to the California Rules of Court.

[2]    All further undesignated statutory references are to the Welfare and Institutions Code.

[3]    A.K.'s legal guardian separately seeks an extraordinary writ from the orders made at this hearing in *M.K. v. Superior Court* (F090734). We limit recitations of the facts to those relevant to the issues mother raises.

mother physically abused A.K. and put her at further risk of harm by engaging in domestic violence with her boyfriend, J.M., in A.K.'s presence, using methamphetamine, and having untreated mental health issues.  The petition also contained allegations pertaining to guardian and A.K.'s alleged father.[4]

On August 12, 2024, during the agency's initial investigation, mother was in the hospital after giving birth to A.K.'s sibling.  A nurse reported to the social worker that she observed mother to be erratic, noncooperative, agitated, and visibly symptomatic for mental health issues.  They gave her medication to calm her, and she had since been sleeping.  The nurse further reported that mother had provided no care for the baby and did not appear capable of doing so.  The social worker was able to briefly interview mother.  Mother admitted to methamphetamine use, domestic violence in A.K.'s presence, and mental health issues.  She indicated she lived with J.M. at guardian's home.

On August 14, 2024, the social worker was informed by hospital staff that mother had been placed on a section 5150 hold and was pending placement and transport to a psychiatric facility.

The detention hearing was conducted on August 15, 2024.  Mother was not present and did not answer the clerk's attempted telephone call.  The minute order indicates that the social worker advised mother might be unavailable due to her section 5150 hold.  Guardian testified at the hearing, and during her testimony stated that mother did not live with her.  The juvenile court ordered A.K. to remain detained from

---

[4]     The petition also alleged A.K.'s infant sibling came within the juvenile court's jurisdiction.  Mother's boyfriend, J.M., is A.K.'s sibling's alleged father.  A.K.'s sibling is not a subject of this writ proceeding, and we omit facts pertaining to her to the extent they are not relevant to this petition.

Further, A.K.'s alleged father is not a party to this proceeding and, to our knowledge, has not separately sought relief.  We omit facts pertaining to him to the extent they are not relevant to this petition.

guardian and her parents. A jurisdiction/disposition hearing was set for September 12, 2024.

*Jurisdiction and Disposition*

In its jurisdiction report dated September 11, 2024, the agency asserted that mother's whereabouts were unknown. Mother did not make herself available to schedule visits with the children or otherwise have any contact with the agency. The following efforts to locate her were included in the report: On August 29, 2024, J.M. reported mother did not have a phone, and he did not know where she was staying. On September 3, 2024, guardian declined to provide any information on mother's whereabouts.

Additionally, the agency attached a declaration of due diligence detailing further efforts made to locate mother in September 2024, including searching databases such as CWS/CMS, the Merced County Jail Inmate Locater, www.Vinelink.com inmate locator, the ICE detainee database, a welfare recipient database, the Megan's law website, the CDCR inmate locator, Facebook, Accurint, and www.truepeoplesearch.com. The declaration also included the agency's unsuccessful efforts to contact mother by letter and telephone through addresses, including guardian's address and an address in Winton, and phone numbers that resulted from the searches.

On September 12, 2024, the date set for the jurisdiction/disposition hearing, mother was not present. Guardian requested a contested hearing as to jurisdiction, which the juvenile court set for November 5, 2024, with a readiness conference set for October 31, 2024.

In the agency's disposition report dated October 16, 2024, it was reported that mother's whereabouts remained unknown. As such, the agency recommended mother be bypassed for services pursuant to section 361.5, subdivision (b)(1).[5] If mother became

---

[5] Pursuant to section 361.5, subdivision (b)(1), reunification services need not be provided when the juvenile court finds by clear and convincing evidence: "That the

4.

available, she would be referred to domestic violence classes, parenting classes, and a mental health evaluation and treatment.

According to the report, mother still had not made herself available to the agency nor attempted to schedule visitation. On October 11, 2024, however, mother's relative reported that mother and J.M. showed up at their residence asking for help because the guardian had called the police on them. It was reported mother did not have shoes on, and she and J.M. appeared to be under the influence. The relative asked them to leave, and they did without incident.

At the readiness conference conducted on October 31, 2024, guardian's attorney represented that mother was present in the courtroom prior to the case being called but had gone outside and might have been elsewhere in the courthouse. Efforts to locate mother in the hallway were unsuccessful, and mother did not end up attending the hearing. The juvenile court directed guardian to provide mother's contact information to the social worker after the hearing. The matter was trailed to November 5, 2024.

Mother made her first and what would be her only appearance in court on November 5, 2024. She provided paternity and ICWA testimony and was appointed an attorney. Her attorney was not present, but mother was provided with her business card. Mother stated her phone number on the record.[6] The juvenile court set the contested jurisdiction/disposition hearing for December 17, 2024, with another readiness conference set for December 12, 2024, so that mother's attorney could be present. J.M.'s attorney indicated guardian had provided mother's current address and e-mail address, which she would provide to county counsel.

---

whereabouts of the parent or guardian are unknown. A finding pursuant to this paragraph shall be supported by an affidavit or by proof that a reasonably diligent search has failed to locate the parent or guardian. The posting or publication of notices is not required in that search."

[6]     The phone number mother provided on the record is the same number attributed to guardian throughout the record.

At the readiness conference conducted on December 12, 2024, mother was not present. Mother's attorney waived mother's appearance and declared ready for the hearing. The juvenile court continued the readiness conference to December 16, 2024, due to county counsel's representation it would be filing an addendum report and held the December 17, 2024 date for the contested hearing.

An addendum report dated December 13, 2024, indicated that on December 13, 2024, social workers attempted to contact mother at an address in Gustine provided by guardian. When they arrived at the home, the woman who answered the door told them that mother and J.M. had been there for a short time, "for about a month—a month and a half to two months ago," and she did not know anything about their current whereabouts. The report further indicated that the social worker had asked guardian for contact information for mother on several occasions, and guardian would not provide information on how to contact her and appeared to be trying to "control the whole situation with the minors." The report also stated that J.M. had reported that guardian had been telling him and mother not to go to court hearings or visits because her attorney is "taking care of things" for them.

At the readiness conference on December 16, 2024, mother was not present. Mother's attorney represented that she had only been able to talk to mother for "about 15 seconds." She had left messages and received no responses.

On December 17, 2024, the date set for the jurisdiction hearing, mother was not present. Mother's attorney indicated she did not have any way to get in touch with mother. Counsel represented that guardian had told her the previous day that mother would be getting a cell phone and contacting her "and that did not happen." The juvenile court set a contested jurisdiction/disposition hearing for January 21, 2025, with a readiness conference set for January 16, 2025.

At the readiness conference on January 16, 2025, mother was not present. A.K.'s father's attorney, making a special appearance for mother's attorney, waived mother's appearance and declared ready for the contested jurisdiction/disposition hearing.

The contested jurisdiction/disposition hearing was conducted on January 21, 2025. Mother was not present. Guardian testified, and during her testimony, denied that she told mother not to contact the social worker. She stated, to the contrary, she had given mother all of the social worker's messages and encouraged her to get a hold of her attorney. According to guardian, mother texted her attorney but she did not know the contents of the text message. During mother's attorney's cross-examination of guardian, she asked guardian if mother had a phone number, which guardian confirmed she did, and asked guardian for that phone number. Guardian responded, "Yes. I believe she said she texted you. Do you have the last text from her? Because that's her phone number." Counsel responded, she did not have the number, and guardian provided a number on the record.

After the presentation of evidence, prior to the juvenile court's ruling, mother's attorney indicated she had just been given a new phone number for mother and requested a continuance to attempt to reach her. County counsel objected, "not because of [mother's attorney's] lack of diligence or anything, but … [guardian] has given us several numbers for … mother throughout this time, we have tried to contact her at previous hearings" and a continuance was not in the best interest of the child. The court denied the request for a continuance and proceeded to its ruling.

The juvenile court found the allegations in the petition were true and that A.K. came within the court's jurisdiction pursuant to section 300, subdivisions (a), (b)(1), (c), and (g), denied mother reunification services pursuant to section 361.5, subdivision (b)(1), and ordered guardian to receive reunification services pending psychological evaluations. The court set a six-month review hearing date for July 10, 2025.

*Reunification Period and Six- and 12-Month Review Hearing*

In the agency's six-month report dated July 9, 2025, it was reported mother's whereabouts remained unknown. The agency attached the psychological evaluations guardian underwent. Guardian told one of the evaluators on February 11, 2025, that mother was residing with friends in the Palo Alto area and was doing well. The report included the following attempts to locate and contact mother.

On March 31, 2025, guardian reported she did not know of mother's whereabouts but that she may have been in Gustine or Sacramento. Guardian could not provide a timeframe for when she last spoke with mother and denied that mother was living with her.

In March, April, May, and June 2025, the social worker searched for mother on the eligibility database, CalSAWS and found an active CalFresh, In-home support services, and Medi-Cal case with guardian's address listed as the address and guardian's phone number listed as the phone number. The application date for CalFresh was December 2, 2024.

In June 2025, the social worker requested reports of any contact with mother from the Atwater Police Department, the Merced Police Department, and the Merced Sheriff's Department. The Atwater Police Department responded that on January 10, 2025, they received a domestic violence call involving mother and J.M. taking place at a church in Winton.

The social worker also searched the Merced County WebPortal and learned that on May 22, 2025, J.M. was granted permission from his probation officer to travel to Mexico to visit mother because she was hospitalized. He traveled to Baja, California from June 2, 2025, to June 5, 2025. The social worker noted she asked J.M. where mother was on May 8, 2025, and he denied knowing her whereabouts. The agency was unable to confirm mother's whereabouts in Mexico or her current living situation.

The report indicated mother's last documented contact with the agency was during the initial investigation on August 12, 2024. She had not engaged in any services or made any effort to have visits scheduled. The agency was recommending reunification efforts for mother be terminated as the "requisite amount of time, six months has passed and her whereabouts remain unknown."[7]

An updated declaration of due diligence was attached to the report setting forth efforts to locate mother made in June 2025. The databases listed in the previous declaration of due diligence from September 2024 were again searched, and mother was attempted to be contacted by phone and letter.

At the six-month review hearing on July 10, 2025, mother was not present but was represented by counsel. The matter was continued to July 17, 2025.

At the continued hearing on July 17, 2025, mother was not present. Mother's attorney requested a continuance, which the juvenile court granted. The guardian, whose attorney was not present, stated on the record, "I would … like to provide [mother's] whereabouts." Mother's attorney responded, "I know where she is." Guardian said that mother "would like to appear on Zoom today, but we couldn't get a hold of you (mother's attorney) to ask for that." Mother's attorney stated she had previously spoken to mother, that mother knew how to get a hold of her, and she had recently been trying to reach mother with no answer.

At the continued hearing on July 31, 2025, mother was not present. County counsel stated the recommendations set forth in its report included discontinuing guardian's reunification services pursuant to the bypass provision of section 361.5, subdivision (b)(2), and limiting educational rights for the parents and guardian. Mother's

_____

[7] Section 361.5, subdivision (d) provides: "If reunification services are not ordered pursuant to paragraph (1) of subdivision (b) and the whereabouts of a parent become known within six months of the out-of-home placement of the child, the court shall order the social worker to provide family reunification services in accordance with this subdivision." (§ 361.5, subd. (d).)

9.

attorney stated she had an opportunity to speak with mother and was submitting on her behalf concerning educational rights. Guardian requested a contested hearing. The hearing was set for September 23, 2025, with a readiness conference for September 9, 2025.

At the readiness conference on September 9, 2025, mother was not present. Mother's attorney indicated she submitted or "attempted to submit" when they were last in court and was prepared to proceed. Guardian stated on the record, "I just wanted to be sure that everyone knows where [mother] is, her whereabouts." County counsel responded, "Yes. We know that she's in Mexico." Mother's attorney stated she told the agency where mother was located along with her phone number, and county counsel represented, "And I've been in contact with [mother's attorney] about her client."

A supplemental petition was filed on September 17, 2025, alleging A.K.'s relative placement was no longer appropriate for her or her sibling. The agency requested A.K. and her sibling be removed.

A hearing was conducted on the supplemental petition on September 18, 2025. Mother was not present. Mother's attorney indicated she had no objection to the petition and submitted the matter. Guardian asked for an evidentiary hearing on re-detention. The matter was set for contest along with the existing six-month review hearing date of September 23. 2025.

On September 23, 2025, mother was not present. The juvenile court continued the contested six-month review hearing to November 4, 2025, and noted, "It's going forward on that date no matter what." Guardian stated on the record that she had been in contact "with the facility where [mother] is at" and asserted "[s]he has not been properly noticed so that she can appear by Zoom" and that "[a] link was supposed to be sent to them yesterday. Nothing was sent." Mother's attorney responded, "Let me clarify. Mother's counselor in Mexico contacted me, and we talked. I spoke to [m]other yesterday. Within minutes, [guardian] contacted me and said that [m]other's counselor has contacted her

and wants me to send the Zoom link.  That's a lie."  Mother's attorney continued, "And [guardian] texted me, and I told her to stop texting me, stop contacting me.  She has an attorney, and she needs to stop contacting my client and speaking to my client's counselor."  The court replied, "That will be the Court's order," noting if guardian continued to do so, she would be held in contempt.

The court went on to conduct the section 387 hearing.  Mother's attorney stated she had spoken to mother, and mother wanted the children to stay with the relative care provider.  The juvenile court sustained the section 387 petition.  A.K. and her sibling were placed in a foster home that was noted to be a concurrent placement for adoption in the case of nonreunification.

At the review hearing conducted on November 4, 2025, mother was not present.  Mother's attorney requested a continuance.  She explained, "I have not been able to get in touch with my client.  She was at a rehab facility.  It's my understanding that [guardian] took her out on October 12th, and I have not been able to reach her, even though I have tried through different means.  I received text messages this morning which claim to be my client, but I do not believe they are.  So I would be asking for a continuance in this matter."  County counsel objected, stating, "The mother was in an inpatient facility.  She was noticed of hearings.  She—as [mother's attorney] stated, she has had previous conversation with the mother.  The mother was checked out, as [mother's attorney] stated, on October 12th by [guardian].  I believe [guardian] is manipulating these proceedings, Your Honor, and trying to make the mother absent for the purpose of a continuance.  The mother knew of this hearing, could make herself available for this hearing.  She was checked out of her rehab facility, so we know she is not in an inpatient facility at this time, would have the ability to be here, and she has made contact with [mother's attorney] with knowledge of this hearing and is still not here."  Mother's attorney responded that the last time she spoke with mother was before she was checked out of the hospital.  Minor's counsel objected to any continuance.  Guardian's attorney

asserted mother had received improper notice. The juvenile court denied the request for a continuance and proceeded with the review hearing. Mother's attorney later indicated that because she did not know where mother was, she had "no input, no evidence to present."

During the hearing, guardian testified, among other things, that mother was "very stable" and "able to live on her own," noting she did not live with guardian. She further testified that she "would leave that up to [mother] to discuss and reach out to the social worker to talk about, you know, a care plan so that she can be back in her own children's lives." She asserted mother "just got out of rehab" and had done everything she needed to do for the past six months.

Following the presentation of evidence and argument, the juvenile court found by clear and convincing evidence that mother had failed to contact and visit with A.K. for the past six months, her whereabouts were currently unknown, and her progress had been "none." The court terminated reunification services for mother and guardian and set a section 366.26 hearing for February 19, 2026. The court found notice had been given as required by law. The court later vacated the February 19, 2026 date and set the hearing for February 11, 2026.

On January 27, 2026, while this writ proceeding was pending, this court filed a stay of the section 366.26 hearing scheduled for February 11, 2026.

<strong>DISCUSSION</strong>

## I. Sufficiency of the Notice of Intent and Petition

As a threshold matter, the agency urges us to (1) strike mother's petition because the record does not disclose that she filed a timely notice of intent or, in the alternative, (2) dismiss mother's petition for failure to comport with the procedural requirements of rule 8.452. We decline to do either.

### A.    *The Notice of Intent was Sufficient*

First, the agency points out that no notice of intent was filed pertaining to minor A.K. with mother's name listed as the petitioner.  Rather, two notices of intent were filed purported to be signed by mother:  (1) one filed on November 10, 2025, with A.K.'s name listed as petitioner pertaining to A.K.'s case and (2) one filed on November 7, 2025, with mother's name listed as the petitioner pertaining to A.K.'s sibling's case.  On December 3, 2025, this court recognized the notices as being filed by mother as the petitioner.  Because the order setting the section 366.26 hearing as to A.K.'s sibling had been made on August 19, 2025, this court deemed the notice of intent filed on November 7, 2025, as to A.K.'s sibling, to be a notice of appeal and declared writ proceedings would proceed in the current matter as to A.K. only.  Mother thereafter filed a writ petition on January 5, 2026, signed by her, declaring under penalty of perjury the information contained in the petition was true.

Like notices of appeal, notices of intent must be liberally construed in favor of their sufficiency.  (*Suzanne J. v. Superior Court* (1996) 46 Cal.App.4th 785, 787–788; see rule 8.100(a)(2).)  "The notice is sufficient if it identifies the particular judgment or order being appealed."  (Rule 8.100(a)(2).)

Here, mother signed a "NOTICE OF INTENT TO FILE WRIT PETITION …" (JV-820) form, which clearly sets forth that the order intended to be challenged was the "order setting a hearing under Welfare and Institutions Code section 366.26" made on November 4, 2025.  Though A.K.'s name is listed as the petitioner, a notice of intent must be signed by either the petitioner or the petitioner's attorney (rule 8.450(e)(3)), and the printed instructions on the JV-820 form state this requirement.  Thus, mother's signature suggests that mother is the person who intended to file the petition, and the listing of A.K. as the petitioner was an error in filling out the form.  This inference is supported by the fact that mother ultimately did file a petition that challenged the order from mother's perspective, and did not make any attempts to assert A.K.'s rights or make

13.

arguments with regard to her. Liberally construing the notice of intent, we conclude, because the notice of intent adequately stated the order being challenged, was signed by mother, was previously interpreted by the superior court and this court as being filed by mother, and was followed by a writ petition asserting mother's rights, it is sufficient and timely. Accordingly, we decline to strike mother's petition.[8]

### B. The Petition is Sufficient

The agency next contends mother's petition does not comport with rule 8.452 and should therefore be dismissed.

Rule 8.452 sets forth the content requirements for an extraordinary writ petition, including that a petition "must be accompanied by a memorandum," which "must provide a summary of the significant facts, limited to matters in the record"; "must state each point under a separate heading or subheading summarizing the point and support each point by argument and citation of authority"; and "must support any reference to a matter in the record by a citation to the record" and "explain the significance of any cited portion of the record and note any disputed aspects of the record." (Rule 8.452(a), (b)(1)-(3).)

We liberally construe a writ petition in favor of its adequacy where possible, recognizing that a parent representing him or herself is not trained in the law. (See rule 8.452(a)(1).)

Here, mother completed a "PETITION FOR EXTRAORDINARY WRIT" (JV-825) form and under the section that requires petitioners to specify the grounds for error wrote, "Order was issued following a hearing held without legally required notice to the parents and guardian, in violation of due process. Lack of notice deprived the parties

---

[8] The agency contends the evidence on the record, including allegations that guardian has written e-mails and text messages pretending to be J.M. and mother supports an inference that guardian filed the notice of intent without mother's authorization. While we appreciate the agency's concerns, we decline to infer from these references to the record that mother did not authorize the notice of intent or petition filed in this case.

14.

of the opportunity to participate, present evidence, or object. Court exceeded its authority." The department argues the petition is not adequate because it does not appropriately cite to the record or legal authority.

In liberally construing mother's petition, we contend she makes adequate references to the record and sufficiently states an arguable claim as to the issue of notice that we are able to review. While the petition is not robust, the facts related to this issue are apparent from the face of the record as evidenced by mother's absence from the hearing, lack of notice due to the agency's assertion that her whereabouts were unknown, and the denial of her attorney's request for a continuance due to mother's unavailability. Further, mother's indication she was deprived of an opportunity to participate, present evidence, or object, adequately states legal support for her contention, as it is well established, due process requires notice and an opportunity to be heard. (*In re A.H.* (2022) 84 Cal.App.5th 340, 363.)

We find mother's petition adequate for review.

## II.     Alleged Defective Notice and Due Process Violation

Mother contends she was denied notice of and the opportunity to be heard at the review hearing in violation of her due process rights. We do not find a due process violation and conclude that any notice error was harmless beyond a reasonable doubt.[9]

---

[9]     We decline to find, as the agency requests, that mother's claim that she was not provided proper notice of the hearing was forfeited. While mother's attorney did not object to the juvenile court finding notice was proper, she requested a continuance of the hearing based upon her assertion that she had not spoken to mother. She also disputed county counsel's assertion that she had spoken to mother so as to give her actual notice of the hearing.

Guardian's counsel did assert improper notice as to mother. Without deciding whether guardian had standing to lodge this objection, the issue was before the trial court to consider, and the parties had an opportunity to argue it. We conclude under the circumstances of this case, the claim was preserved. Even if we were to find the claim forfeited by failure to object, we exercise our discretion to review the claim on its merits. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

15.

"Due process requires that a parent is entitled to notice that is reasonably calculated to apprise him or her of the dependency proceedings and afford him or her an opportunity to object." (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188.)

When a parent's whereabouts are unknown, however, "[t]here is no due process violation where a child welfare services agency has exercised reasonable diligence to provide notice." (*In re Daniel F.* (2021) 64 Cal.App.5th 701, 712.) "[R]easonable diligence 'denotes a thorough, systematic investigation and an inquiry conducted in good faith.' [Citation.] It includes searching not only 'standard avenues available to help locate a missing parent,' but ' "specific ones most likely, under the unique facts known to the [Agency], to yield [a parent's] address." ' " (*Ibid*.)

We consider de novo whether inadequate notice violated a parent's due process rights. (*In re Mia M.* (2022) 75 Cal.App.5th 792, 806.)

Here, there is no evidence mother received notice in one of the statutorily-required manners.[10] Nor is there evidence that mother had actual notice based on mother's attorney's request for a continuance and representation that she had not spoken to mother. Thus, the question before us is whether the agency exercised reasonable diligence in locating mother to provide notice. We conclude that it did.

We note the record reveals that mother was well aware of the proceedings as evidenced by her contact with the agency at the outset of the proceedings; her appearance at one hearing; and her contact, albeit sporadic, with her attorney. She failed, however, to make any efforts to contact or work with the agency or participate in the proceedings at

---

[10] For a status review hearing held pursuant to section 366.21, a parent must receive notice advising them of the nature of the hearing, "the right to be present, the right to be represented by counsel, the right to request counsel, and the right to present evidence" and that if they "fail to appear, the court may proceed without them." (§ 293, subd. (d).) The agency is required to serve notice of section 366.21 hearings to mothers by first-class mail to the last known address, by personal service, or by electronic services not earlier than 30 days, and not later than 15 days before the hearing. (§ 293, subds. (c) & (e).)

all, rendering it difficult, to say the least, for the agency to provide her with notice or information regarding any aspect of the dependency case. To us, it appears mother was voluntarily absenting herself from the proceedings and actively keeping her whereabouts from the agency. We recognize, too, there appeared to be a concerted effort on behalf of guardian and J.M. to keep the agency from locating mother by being evasive, uncooperative, or potentially misleading in providing her whereabouts.

The agency, however, documented ample efforts to locate and make contact with mother. The agency searched broadly over several databases typically utilized to locate someone and appropriately tailored its search by regularly asked guardian and J.M. regarding mother's whereabouts. They received information that mother was staying with guardian in Atwater, which guardian repeatedly denied, and was living in Winton, Palo Alto, Gustine, Sacramento, and Mexico. The agency followed up on leads where possible by attempting to contact mother via letter, telephone, and in person to no avail. We find the foregoing constituted reasonable diligence to locate and provide notice to mother.

We acknowledge there appeared to be a period of time nearing the review hearing where mother's location in a rehabilitation facility in Mexico was known, and mother seemed to be in some contact with her attorney, as well as the agency through her attorney. There is nothing in the agency's reports that document efforts to contact mother at the facility in Mexico to provide notice of the hearing. By the time of the review hearing on November 4, 2025, however, mother's whereabouts again became unknown as evidenced by mother's attorney's representations she had left the facility and was unable to be contacted. Given the history of the case, we find no due process violation.

In any event, we conclude any error or defect in notice was harmless. "Unless there is no attempt to serve notice on a parent, … errors in notice do not automatically require reversal but are subject to" harmless error review. (*In re J.H.* (2007) 158 Cal.App.4th 174, 183.) As we have established, the agency documented several

17.

efforts to locate mother throughout the proceedings; thus, any error here is amenable to harmless error analysis. We conclude any error was harmless under any standard. (See *In re Angela C.* (2002) 99 Cal.App.4th 389, 395 [notice error evaluated under a "beyond a reasonable doubt" standard]; but see *In re Jesusa V.* (2004) 32 Cal.4th 588, 625 [applying the reasonable-probability test to alleged due process error].)

First, as stated above, mother had not meaningfully participated in any aspect of the dependency proceedings. There is no reason to believe that, had mother received notice of the hearing, she would have attended. (See *In re James F.* (2008) 42 Cal.4th 901, 916 [considering what a party "would have" done if provided proper notice in determining harmlessness of notice error].)

Second, even if mother had attended the hearing, because of the posture of the case, her participation would have had no effect on the outcome. Mother was not entitled to receive reunification services at the review hearing. She was bypassed for services because her whereabouts were unknown, an order she has not challenged below or on appeal. By the time the review hearing was conducted on November 4, 2025, the statutory period of six months during which the court was required to order services under section 361.5, subdivision (b)(1) had long passed.[11]

Moreover, the court had no basis on which to exercise its discretion to extend the reunification period to offer mother services. As stated above, the review hearing conducted on November 4, 2025, acted as a six- and 12-month review hearing. If, like here,[12] a 12-month review hearing is conducted after the statutory reunification period

---

[11] A.K. was placed in an out-of-home placement on August 12, 2024. Mother was bypassed for services under section 361.5, subdivision (b)(1) on January 21, 2025.

[12] A.K. was part of a sibling group whose members were removed at the same time and in which one member was under three years of age on the date of initial removal. Thus, the time for reunification services was six months, not to exceed 12 months from the date the child entered foster care. (§ 361.5, subd. (a)(1)(B), (C).)

18.

has elapsed, and a child is not returned to the custody of a parent or guardian, the juvenile court may only continue the case under specific circumstances. (§ 366.21, subd. (g).) Here, because (1) a finding of reasonable services was not required due to mother's bypass (*id*., subd. (e)(2), citing § 366, subd. (a); see § 366.21, subd. (g)(1); *In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 604); (2) there is no evidence that mother was arrested or detained in relation to an immigration issue (see § 366.21, subd. (g)(2)) or that A.K. was not a proper subject for adoption (see *id*., subd. (g)(5)), and (3) it was undisputed mother did not have any contact or visitation with A.K. throughout the entirety of the proceedings (see *id*., subd. (g)(1)(A)-(C)), there was no basis for the court to continue the hearing beyond the 12-month mark. (See *In re A.D.* (2011) 196 Cal.App.4th 1319, 1327 [notice error harmless where there was "no basis on which the juvenile court could have found more services would have been in [the child's] best interests" due to "fail[ure] to participate meaningfully in her case plan or maintain contact with the social worker"]).

Additionally, though mother had some limited contact with her attorney, she at no point made any attempt to receive reunification services or otherwise participate in the proceedings. Rather, at one of the continued dates for the review hearing, mother's attorney represented she had spoken to mother and was submitting on the recommendations, suggesting mother was not interested in pursuing services or a different outcome.

For these reasons, we find any error in notice harmless beyond a reasonable doubt.

---

The date a child enters foster care is calculated under section 361.49. (§ 361.5, subd. (a)(1)(B).) Section 361.49 provides, "a child shall be deemed to have entered foster care on the earlier of the date of the jurisdictional hearing … or the date that is 60 days after the date on which the child was initially removed from the physical custody of their parent or guardian." (§ 361.49, subd. (a).)

The initial removal date was August 12, 2024. October 11, 2024, is 60 days after the initial removal and earlier than the jurisdictional hearing conducted on January 21, 2025. Thus, the date A.K. entered foster care was October 11, 2024, and the 12-month date was October 11, 2025, almost a month before the review hearing was conducted.

In her petition, mother suggests the juvenile court's orders were erroneous because she had completed a residential rehabilitation program and has maintained sobriety. She further asserts she was not provided with services she asked for such as visitation, transitional housing support, or in-home assistance. Evidence supporting these statements was not before the juvenile court, and these statements are therefore inappropriate for us to consider in these writ proceedings. (See rule 8.452 [writ petitions are to be limited to facts on the record]; see also *In re Zeth S.* (2003) 31 Cal.4th 396, 400 [generally, a reviewing court may not consider evidence that is outside the record on appeal and not considered by the trial court].)

## DISPOSITION

The petition for extraordinary writ is denied. The stay on the section 366.26 hearing, filed on January 27, 2026, is lifted. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).