Filed 3/30/26  K.S. v. Superior Court CA1/2
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| K.S.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>CONTRA COSTA COUNTY,<br><br>    Respondent;<br><br><br>CONTRA COSTA COUNTY<br>CHILDREN & FAMILY SERVICES<br>BUREAU et al.,<br><br>    Real Parties in Interest. | A175131<br><br>(Contra Costa County Super. Ct.<br> No. J2500457) |

## MEMORANDUM OPINION

K.S., the mother of six-month-old B.S., petitions for extraordinary relief to overturn a December 17, 2025 order bypassing her for reunification services and setting a hearing under Welfare and Institutions Code section 366.26, arguing she was not given constitutionally adequate notice of these proceedings in violation of her due process rights.

1

B.S. came to the attention of the Contra Costa Children & Family Services Bureau (the Bureau) when mother was admitted to a local hospital 38 weeks into her sixth pregnancy, presenting with complex mental health issues, reportedly homeless and having tested positive for methamphetamine. Shortly after B.S. was born, mother was transferred to a psychiatric hospital and then upon her discharge went missing for the duration of proceedings. We perceive no due process violation in the juvenile court's decision to proceed in her absence.

The Bureau did not, as mother contends, violate her due process rights by failing to notice her for the September 12, 2025 detention hearing, thereby depriving her of her rights to be present and present evidence. The emergency social workers who tried to visit mother on September 9 while she was initially hospitalized were told the psychiatric unit had temporarily declared her incompetent. The social workers tried to rouse mother to talk with her, but she was unresponsive. They left their contact information and a court information packet for her with the in-house social worker who had accompanied them to her bedside. At the detention hearing, mother's counsel told the juvenile court that mother was not present not because she lacked notice of the proceeding but because she was on a Welfare and Institutions Code section 5150 hold, and counsel waived formal arraignment and an advisement of rights on her behalf and entered a general denial. The court found that mother was given notice as required by law, but could not be present because of the section 5150 hold. Mother points to no error in that ruling and we perceive none. (Cf. *In re Daniel S.* (2004) 115 Cal.App.4th 903, 910 [notice of detention hearing held constitutionally adequate where social worker tried to meet with mother in hospital but was prevented by attending physician from doing so].)

Nor is the evidence insufficient to support the juvenile court's finding at the December 17, 2025 hearing that the Bureau exercised reasonable diligence to locate mother once it was reported at the October 1, 2025 hearing that her whereabouts had become unknown. (See generally *In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189.) Mother acknowledges that her last known placement, a psychiatric unit from which she had been discharged, again gave her the Bureau's contact information in order for her to contact the Bureau about the next steps and follow up about her baby. She also acknowledges the Bureau conducted an absent parent search; tried to call her at every phone number it could find for her (including those that the absent parent search yielded); searched two different databases (CALSAWS and AURRINT) as well as DMV records; searched multiple criminal databases to check if she was being held in custody; sent letters by both regular and certified mail to her five last known addresses *and* requested address verification of those addresses from nearby post offices *and* personally visited two of them; talked to her own mother (the maternal grandmother of the baby) who hadn't spoken to mother in months and didn't know where she was or how to get in touch with her; and spoke with a friend who said she knew how to get in touch with mother and agreed to pass on the social worker's contact information as soon as she could find mother. By the time of the October 22, 2025 hearing, mother's counsel agreed it was appropriate for the case to move forward to a contested jurisdiction hearing because mother still could not be located, and the court found that the Bureau had "made every effort, . . . to no avail" to find her.

Despite these thorough efforts, mother faults the Bureau for not asking the maternal grandmother about mother's whereabouts again when the maternal grandmother attended the subsequent hearing on December 4,

3

2025 (which resulted in a continuance). But " 'view[ing] the whole record in a light most favorable to the judgment' " and " 'drawing all reasonable inferences in favor of the decision of the trial court' " as we must (*R.R. v. C.R.* (2026) 117 Cal.App.5th 1262, 1272), we infer the Bureau knew it would have been pointless: the maternal grandmother had been present at the previous hearing at which the juvenile court found the Bureau had been trying to no avail to find mother, and again sat in silence at the December 4 hearing as the court and counsel once again addressed mother's unknown whereabouts (mother's counsel: "I have not had the opportunity to speak with my client at all"). Presumably the Bureau realized the maternal grandmother would have spoken up during the hearing (or before it) if she had any new information to report about mother's whereabouts.

Nor did the Bureau act unreasonably in not visiting three of five addresses it found for her (on Heron Drive, West Street and West 10th Street). The Bureau sent letters by regular and certified mail to two of them, and the third was a six-year-old address culled from DMV records that the post office had verified as being outdated ("Moved-No Forwarding"). Furthermore, the letters sent to one of the addresses were rejected and returned to the Bureau, and the letters sent to the other yielded no response after more than a month of waiting. Mother cites no authority suggesting personal visits were constitutionally required on top of attempted mail contact in these circumstances (not to mention, repeated efforts to reach her by phone). The standard is one of reasonableness and good faith, not commitment of every last resource no matter how unlikely to prove fruitful. (See *In re Justice P., supra,* 123 Cal.App.4th at p. 188 ["Reasonable diligence denotes a thorough, systematic investigation and an inquiry conducted in good faith"].) "[T]here is no due process violation when there has been a good

4

faith attempt to provide notice to a parent who is transient and whose whereabouts are unknown for the majority of the proceedings." (*Ibid*.) "[W]here a parent cannot be located notwithstanding a reasonable search effort, the failure to give actual notice will not render the proceedings invalid." (*In re J.H.* (2007) 158 Cal.App.4th 174, 182.) The Bureau's efforts to locate mother at these three addresses were undertaken reasonably and in good faith.

Mother also faults the Bureau for not inquiring of Melvin T., who signed a certified mail return receipt from one of the addresses it found for mother. Contrary to her contention that "[t]here was simply no follow-up by the Bureau" on this potential lead, the social worker went to that address in person but upon finding nobody there left a letter there but received no response.

Nor, finally, did the Bureau act unreasonably in not re-interviewing mother's friend. The friend said she could locate mother and had agreed to pass on the Bureau's contact information once she did so but the Bureau heard nothing further. The Bureau tried calling the friend a week later but got no response. By the time of the contested jurisdiction/disposition hearing, the Bureau could reasonably conclude the friend had been unable to find mother, particularly since the friend had said mother wanted to visit her baby but mother never reached out to try.

"Due process is a flexible concept that depends on all the circumstances of the case and a balancing of various factors." (*A.F. v. Jeffrey F.* (2023) 90 Cal.App.5th 671, 690.) " 'It is not always possible to litigate a dependency case with all parties present. The law recognizes this and requires only reasonable efforts to search for and notice missing parents. Where reasonable efforts have been made, a dependency case properly proceeds.' "

(*In re J.H., supra,* 158 Cal.App.4th at p. 182.)  The circumstances of this case in no way resemble the two authorities mother cites, extreme cases involving practically no search efforts at all.  (See *In re A.H.* (2022) 84 Cal.App.5th 340, 369-371; *In re Jasmine G.* (2005) 127 Cal.App.4th 1109, 1116.)  Mother was afforded due process.

## DISPOSITION

Mother's petition for extraordinary writ relief is denied on the merits, and her request for a stay is denied as moot.  (Cal. Rules of Court, rule 8.452(h).) This decision is final immediately.  (*Id.*, rules 8.452(i), 8.490(b).)

STEWART, P. J.

We concur.

RICHMAN, J.

DESAUTELS, J.

*K.S. v. Superior Court* (*Contra Costa County*) (A175131)

7